# B. J. TUIT v. L. E. SMITH.

## APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

Argued May 14, 1890—Decided October 6, 1890.

(*a*) The defendant in ejectment showed title to the property in dispute by proof of a written contract, testamentary in form, executed by the plaintiff's grantor in 1884, that he had been put into possession under said contract, and that on his part he had substantially performed all its terms: See Smith v. Tuit, 127 Pa. 341:

1. The plaintiff, holding directly from the same grantor under a deed executed in August, 1885, and showing no facts which would have authorized his grantor, herself, to rescind the contract contained in the testamentary writing under which the defendant went into possession, was not entitled to recover.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 37 July Term 1890, Sup. Ct.; court below, No. 137 June Term 1886, C. P.

On April 5, 1886, Belford J. Tuit brought ejectment against Laura E. Smith, for a certain house and lot in New Salem. The defendant pleaded not guilty.

At the trial on October 8, 1888, there was a verdict for the plaintiff. Judgment having been entered, on writ of error to No. 374 January Term 1889, Sup. Ct., the judgment was reversed and a new venire awarded: Smith v. Tuit, 127 Pa. 341.

At a second trial, on December 13, 1889, the plaintiff put in evidence a deed to himself for the property in dispute from Mrs. Sarah E. Smith, under whom the defendant also claimed, which was dated August 29, 1885; also an article of agreement between himself and Mrs. Smith, with a bond given in pursuance thereof, and testified that the deed was executed and delivered and the bond was given under said agreement, whereby he undertook to take Mrs. Smith and care for her the remainder of her life, in consideration of said conveyance.

The defendant put in evidence a paper purporting to be the will of Sarah E. Smith, dated October 31, 1884, portions of which were as follows:

Statement of Facts.

"Second. I will and bequeath to Laura E. Smith all my real and personal property of whatsoever kind or nature, including house and lot that I purchased of William M. Jones in town of New Salem, adjoining lands of Jacob Allamon, Caleb Antram and others. I desire that the above described property, after the settlement of all my just debts, heretofore mentioned, shall be for his kindness and care toward me in sickness and in health, in watchfulness and care during all my natural life, and at my decease the aforesaid property shall belong to the said Laura E. Smith, his heirs or assigns, with all rights, liberties and hereditaments, forever and forever.

"Third. It is my will and desire that the said Laura E. Smith have possession of my house on the first day of November, 1884, and he take me with him, and that he take care of me as one of his own family."

This will is given fully in the report of the former trial.

The defendant then testified at length and adduced the testimony of other witnesses as to the way in which the execution of the will had been brought about, and as to the manner in which he had taken care of Mrs. Smith. He testified also that he had gone into possession of the property under the will; that Mrs. Smith had lived in the house with him until near September, 1885, when she went away, without having complained about his treatment of her.

Among the witnesses called by the plaintiff, in rebuttal, was Mrs. Sarah E. Smith, portions of whose testimony were as follows:

"Q. Well, you went to live with Smith there, and he said he gave you your choice of rooms? A. Not then, he didn't. Q. But when you came to move? A. Well, he spoke to me once about my choice of rooms, but I proposed to take the room myself. Q. Who fitted it up? A. Well, I suppose her and him. Q. Well, whose furniture was in the room? A. Why, mine; and she had a couple pieces of carpet; my carpet wouldn't fit. Q. What else? A. And a big chair, I think; well, after while I can't tell what—I don't know what—my carpet, or the chairs—perhaps the carpet wasn't gone, but the chairs were taken up stairs. Q. They had taken what chairs up stairs? A. Why, their own. Q. How long was that after you had moved there? A. Why it wasn't very long. Q. What kind of chairs did you

Statement of Facts.

have in the room? A. Why, a couple for me. Q. Who took them out? A. I can't tell you. Q. Well, did you ever have any conversation with them about it, or either of them. A. No, sir; I don't know that we had any particular conversation. Q. Well, do you know when they took those chairs out? A. And put them up stairs; and I said to Jennie, what did you take the chairs out for? Well, Q. What did she say? A. I don't know what she said, whether she said anything; she was no ways talkative, nor I wasn't; when I had nothing to talk about; and so—well, she set there—it was after breakfast, I think, she set there—now here's the important point, she set there with her elbow on the side of the chair or table, I can't tell you which, but this way, and I want you to understand, and she said to me, " I want you to understand that I am boss here," she said. Q. She said that she wanted you to understand that she was boss there? A. Well, I didn't say no; after a bit I repeated it to Laura Smith. Q. You told Laura about it? A. Yes, sir. Q. What did he say? A. Well, he spoke an ugly word. Q. Well, what was that? A. Well, I can't tell you. Q. What kind of a word? A. Well, kind of a swear; and here—what was I going to say? I was going to say, I am getting forgetful. Well she repeated and said this,—Laura didn't say, I don't think he did— Q. Well, what was it? A. Well, she said that there was some wonderful thing going to happen here. Well, I said nothing. I didn't know what it was even, and just before this she had cut my shoe, and thinks I, the next thing will be my throat. I just thought of that and that's what started me to move. As God is my father and judge this is the truth. Q. Well, how was Jennie towards you, was she kind and considerate, did she treat you right? A. Well, she supposed so. She is an ignorant woman, and I suppose she done the best she could; I can't compare her to anything else. There is some people in this latter day professes to be intelligent, and yet they don't know their duty to an old person. Q. Well, how did Laura treat you while you were staying there with them? A. Well; only sometimes he would take a spurt in ugliness; have his bad words you know. He was just middling. He done the best, I suppose, he knew how. . . . . . Q. Well now, just state briefly why you left Laura and his wife? A. Why it was this here cutting of the shoe and the

expression that she made.   You know I said just a bit ago
that she said that "there is going to be dreadful things here."
Well, thinks I, what in the world—she never explained things
very fully, and when she said that, the shoe was cut, and I
thought my throat would go next.   I am as honest as eternity
in that matter. . . . . "

Other portions of the witness's testimony are referred to in
the opinion of the Supreme Court.

At the close of the testimony, the defendant requested the
court to charge the jury :

1. That the plaintiff has shown no facts which would justify
Sarah E. Smith in rescinding the contract contained in her
will, and therefore he cannot recover.[1]

The court, EWING, P. J., did not answer the defendant's
point specifically, but charged the jury in part as follows :

[The sole question for you to determine is whether or not
Laura Smith performed his part of the agreement under that
contract.   If he did, he is entitled to hold that property as
against the plaintiff in this action, or Sarah Smith, or anybody
claiming under her.   If he did not, if he failed substantially
to perform that contract, then he is not entitled to hold pos-
session of that property, and the plaintiff will be entitled to
recover.

So you will understand, then, that your inquiry is directed
to the ascertainment of the fact, whether or not the defendant
in this action, Laura E. Smith, has substantially performed the
contract implied and in part expressed in the paper dated Oc-
tober, 1884, and signed by Sarah Smith, by which she provides
for giving him this property at her death, and the possession
of it a few days later, at which time he did take possession.] [2]
His part of that contract seems to have been to take her with
him and to care for and maintain her, and treat her kindly and
considerately the rest of her natural life.   That, he says he has
done.   She went with him when he took possession of this
property, and selected her rooms in the house ; they were fitted
up for her partly with her own furniture which she had had
before, and partly with furniture which the defendant furnish-
ed, and she remained there with him until the following Sep-
tember, a period of some ten months, and then she left.   Now,

even if she did leave, if it was without any sufficient reason, that would not enable her, or those claiming under her, to recover possession of this property. . . . . [ If, on the other hand, he failed in the substantial performance of his part of that agreement, did not, during the time she was with him, according to their circumstances and her needs and the conditions of the parties, take care of and maintain her, why then the plaintiff would be entitled to your verdict.] [2]

The jury returned a verdict for the plaintiff. A rule for a new trial having been discharged, judgment was entered, when the defendant took this appeal, specifying that the court erred:

1. In not affirming the defendant's point.[1]
2. In the portions of the charge embraced in [ ] [2] [2]

*Mr. Edward Campbell* (with him *Mr. George D. Howell, Mr. E. H. Reppert* and *Mr. George B. Jeffries*), for the appellant.

Counsel cited: Stephen's App., 87 Pa. 202; Delamater's Est., 1 Wh. 362; Yard v. Patton, 13 Pa. 278; Smethurst v. Woolston, 5 W. & S. 106; Taylor v. Saurman, 110 Pa. 3; Erwin v. Myers, 46 Pa. 105.

*Mr. A. D. Boyd* (with him *Mr. R. E. Umbel, Mr. P. S. Morrow* and *Mr. D. M. Hertzog*), for the appellee.

Counsel cited: Cook v. Trimble, 9 W. 15; Emery v. DeGolier, 117 Pa. 161; Galland v. Schroeder, 21 W. N. 103.

OPINION, MR. JUSTICE STERRETT:

Both parties to this action of ejectment claim under Sarah Smith, who purchased the house and lot in controversy in October, 1884, and, in consideration of plaintiff's agreement to support and maintain her during life, etc., conveyed the same to him by deed dated August 29, 1885. The record of that deed, together with plaintiff's agreement and bond of even date therewith, was given in evidence, and relied on by him as evidence of title and right of possession.

The defendant, on the other hand, relied on a prior contract of a somewhat similar nature, between Mrs. Smith and himself, not in the form of a conveyance or agreement to convey the property in controversy to him, but evidenced by a testamen-

Opinion of the Court.

tary paper executed by her in October, 1884, wherein she de-
vised the house and lot to defendant, " for his kindness and
care toward me in sickness and in health, in watchfulness and
care during all my natural life, and at my decease the aforesaid
property shall belong to the said Laura E. Smith, his heirs or as-
signs, with all rights, liberties, and hereditaments forever. . . . . .
It is my will and desire that the said Laura E. Smith have pos-
session of my house on the first day of November, 1884, and he
take me with him, and that he take care of me as one of his
own family." It was admitted that, in pursuance of what is
contained in the paper, and in accordance with the mutual un--
derstanding and agreement of both parties, the defendant went
into possession and took Mrs. Smith with him as a member of
his family. She selected her rooms in the house. They were
comfortably fitted up for her, partly with her own furniture
which she had before, and partly with furniture procured by
defendant. She remained there as a member of the family un-
til the following September, and then left without assigning
any satisfactory cause for so doing.

When this case was here in 1889, it was held, in an opinion
by our Brother GREEN, that the testamentary paper above re-
ferred to might operate as a memorandum of contract for the
sale of land sufficient to comply with the statute of frauds, and,
as such, it was admissible in evidence during the lifetime of
the testator : that such a paper, without evidence of anything
done under it by the devisee, cannot be treated as anything more
than a will, revocable at the pleasure of the testator ; but, when
the testator has put the devisee in possession of the land, and
the latter has complied with his part of the agreement, the de-
vise loses its revocability, and must be treated as an executed
contract : Smith v. Tuit, 127 Pa. 341. The defendant, on this
trial, undertook to prove and did successfully show that he
was put in possession of the property in controversy by Mrs.
Smith, and that he substantially complied with his part of the
contract by taking her with him and caring for her " as one of
his own family."

The plaintiff undertook to rebut the evidence thus introduced
by defendant, but, aside from showing some slight annoyances
and inconveniences such as are likely to occur in any ordinary
family, the case made out by the defendant's evidence was not

Opinion of the Court.

successfully assailed.  Mrs. Sarah Smith, the old lady who conveyed the property to plaintiff, was his main witness; and, assuming her testimony to be true, there is nothing in it to justify her in rescinding the contract she made with the defendant, and on the faith of which he expended money in the improvement of the property.  The witness was ninety years old, and testified in a rambling and incoherent manner, such as might be expected of one of her advanced years.  In answer to the question, "How did the defendant treat you while you were staying with them?" her answer was: "Well; only sometimes he would take a spurt in ugliness; have a bad word, you know.  He was just middling.  I suppose he done the best he knew how."  Again; in answer to the question whether defendant's wife abused her, she said: "Oh, no, not particularly, any more than she wasn't very much of a talker of a woman, nor she didn't quarrel, nor nothing of the kind."  Again, in answer to the question whether the defendant offered to strike her, her reply was: "Oh, no.  If he had, he would have got a black nose."

Without referring at length to the plaintiff's rebutting evidence, it is sufficient to say that there appears to be nothing in any of it that would justify a rescission of the contract in pursuance of which defendant was put in possession of the premises in controversy.  In view of the insufficiency of plaintiff's rebutting testimony, the court, in defendant's first point for charge, was requested to instruct the jury "that the plaintiff has shown no facts which would justify Sarah Smith in rescinding the contract contained in her will, and therefore he cannot recover."  We think this point should have been affirmed.  The plaintiff was certainly in no better position than Mrs. Smith would have been, if she had brought the action herself without having conveyed the property.  The case may be regarded as a close one, but, on a careful review of the evidence, we are of opinion that it should not have been submitted to the jury.

Judgment reversed.