## Darmopray v. Bayeas

*J. William Ditter, Jr.,* for plaintiff.

*Milton Jacobson,* for defendants.

DANNEHOWER, J., August 8, 1957.—This matter comes before the court on defendants' petition for reargument of preliminary objections in the nature of a demurrer which had been decided adversely to them by the court en banc. Defendants have urged that the decision was erroneous and have been granted leave to reargue the matter and to present a brief of the applicable law.

On September 13, 1956, plaintiff filed a complaint in ejectment for recovery of possession of a dwelling house owned by plaintiff's decedent and then occupied by defendants under an expired lease. Defendants filed an answer admitting the material averments of the complaint, but alleged, in new matter, that they were entitled to undisturbed possession of the premises by virtue of a letter which had been sent to them by decedent nearly three years before his death. The letter was attached to the pleadings and stated, among other things: "I know you have no lease but you are very secure indeed for at my death as long as you 'live' in the house it is to be your home without even paying rent." Plaintiff thereupon filed preliminary objections in the nature of a demurrer. The court held that the writing relied upon by defendants was testamentary in character, and in the absence of probate, provided no defense to plaintiff's complaint. Accordingly, on February 19, 1957, the objections were sustained and judgment for possession was entered in plaintiff's favor. The present petition followed.

Counsel argues that defendants are entitled to a trial before a jury notwithstanding that the letter is treated as a testamentary disposition. As authority for this proposition our attention is directed to the

cases of Smith v. Tuit, 127 Pa. 341, reaffirmed in 137 Pa. 35, and Shroyer v. Smith, 204 Pa. 310.

In the Smith case plaintiff instituted an action in ejectment and offered in evidence a deed of the subject premises, executed and delivered by the owner under whom both parties claimed. In defense defendant offered a paper called the last will and testament which had been signed by the owner prior to the delivery of the above deed. An objection was made that the offer was incompetent and irrelevant. The writing relied on by defendant stated in part, as follows:

" '. . . I desire that the above described property, . . . shall be for his [defendant's] kindness and care toward me in sickness and in health, in watchfulness and care during all my natural life, and at my decease the aforesaid property shall belong to the said Laura E. Smith [defendant]. . .'."

The offer of this writing was to be followed by evidence that defendant took possession of the subject premises in pursuance to the writing, and that testatrix herself, who was alive and in court at the time, also moved into the premises in pursuance of the intention stated in the paper.

The offer was refused and on appeal the Supreme Court reversed. It was held that the evidence was admissible as a memorandum in proof of an executed contract and in satisfaction of the statute of frauds. The significant thing was that testatrix and defendant, by taking possession, actually complied with the terms of their agreement, namely that defendant would receive the premises in consideration for his care of testatrix. Had nothing been done in pursuance to the writing, then it would be treated as a revocable will and nothing more.

The Smith case is readily distinguishable from the case at bar. Here defendants do not contend that they

had entered into a contract with plaintiff's decedent, nor was possession of the premises taken pursuant to decedent's letter.

In the Shroyer case, defendant in ejectment was permitted to introduce a paper in evidence purporting to be the last will and testament of the original owner under whom both parties claimed. The testimony established that defendant had taken possession of the premises pursuant to a contract, and the will was offered to show that it was made in conformity with the terms of this contract, and to take it out of the statute of frauds. In our opinion this case has no connection to the controversy now before the court.

Counsel also argues that the letter written by plaintiff's decedent creates and vests a present interest and is therefore a conveyance inter vivos, and not a will. The argument, in our opinion, has no merit.

An examination of the letter in its entirety shows it to be an informal writing without the attributes or dignity of a deed of conveyance. It does not describe the premises, contains no granting clause, habendum or acknowledgment. As we view the writing, it conveys no present interest but merely appoints what is to be done in the future.

Finally, counsel argues in the alternative that the letter can be construed as creating a binding obligation to grant in the future. It is contended that although there is no recital of consideration in the letter, the doctrine of promissory estoppel applies. The argument is that defendants remained in possession without a lease, made improvements and considered the property as their own, all in reliance on the promise contained in decedent's letter.

This defense to plaintiff's claim was not raised at the prior argument before the court en banc and was not mentioned in defendant's answer.

The doctrine of promissory estoppel is embodied in the Restatement of the Law of Contracts, §90:

"A promise which the promisor should reasonably expect to induce action of forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Inasmuch as defendants rely exclusively on decedent's letter in connection with this argument, we quote the writing in its entirety, as follows:

July 21st, 1952

"Dear Mr & Mrs Bayeas:—

"Enclosed please your two receipts. Please excuse this paper. I have a lot of it on hand and am not fit to tramp around getting things right now. Therefore also your last letter has not as yet been answered and of course I cannot come up for some time. Let me say this much to you so as to make you feel more secure as I know you mentioned something about having no security. You were never more secure than you are right now and even if I should pass out. I have been keeping this from you because I thought we by now understood each other. I never had a tenant I liked better than you folks. I know you have no lease but you are very secure indeed for at my death as long as you 'live' in the house it is to be your home without even paying rent. What could be more secure than that? You would have to go some to find another landlord like that no matter how much you did for him. Of course I want to keep on terms with you and if you really do not care to go along without a lease any longer—for I think this control stuff will soon die and believe me I'm no gouger. I wouldn't do that to even a mean tenant, and you know I had a lot of trouble with the last one & I was the loser in a big way. So

if you do however prefer that lease I'll change my will and allow the property to be sold, but even then you will be further reimbursed for the many nice things you did and paid for. Now keep this under your hat —I'd prefer if you didnt even tell 1413 or anyone else, I mean what I'm now going to tell you (of course including the house deal—you know she had wanted 1411 for her sister) Really keep it between you. Dont have the children leak it out.

"I have to write this long letter in installments because I must spend much time in almost darkness. I was beaten up by a thug who was trying to get a young girl in his car at 7.45 P.M. just as I turned the corner on my way to church. The girl got away but perhaps because I came along he felt I would interfere but I'm no fighter—so angered as he was he walked up to me and gave me several good pelts. I did not go down but oh! my eyes. Badly swollen the right one black— black & blue—the eyeball all blood. My flesh is not lacerated. I couldnt see my doctor until morning. I was in such bad way. Then arrangements were made for me at the best outfit I know of in the world—The Wills Eye Hospital and on account of my affiliation with the Settlement House—I am being treated by the Top Notch Doctor. I got his license number and learned from some of the colored folks who saw part of it that he lives not far away (He was colored) I have conferred with the police but I greatly fear to make a case—on account of a possible revenge act. I'd rather be beat up and overcome it in the end than lose my sight or what have you? We covet your prayers and ask pardon for this lengthy 'black' missive.
Respy
C. M. Frederick"

We cannot perceive, from the above letter, a promise by decedent which should ordinarily be expected to

induce action or forbearance of a definite and substantial character on the part of defendants. The letter purports to make what we believe to be a testamentary disposition and should accordingly be offered for probate. As for the improvements allegedly made by defendants, decedent states in the letter, ". . . you will be further reimbursed for the many nice things you did and paid for". The inference, as we see it, is that defendants are promised *payment* for the things (whatever they may be) they did and paid for. A promise of payment is not the equivalent, in law or in fact, of a promise of a life estate. Nor does remaining in possession without a written lease constitute an act of a definite and substantial character sufficient to make the promise a binding one. We conclude, therefore, that the doctrine of promissory estoppel has no application to the present case.

And now, August 8, 1957, in view of the foregoing, the order of the court in the above captioned matter, dated February 19, 1957, is hereby affirmed.