## McConnell's Appeal.

1. Where a person serves in the capacity of a domestic servant, and no demand for payment of wages is made by the servant for a considerable period after such service has terminated, the presumption is either that the wages have been paid, or that the service was **to** be performed on the footing that no wages were to be paid. This, however, is but a presumption of fact, and may be rebutted.

Gough *v.* Findon, 7 Exch. 49, and Sellen *v.* Norman, 4 C. & P. 80, approved and followed.

2. The present case presenting the facts above stated and containing nothing to rebut the ordinary presumption, but much to strengthen it; *Held*, that the servant was not entitled to recover her wages.

3. The Act of February 24th 1834, § 21 (Pamph. L. 76), which makes servants' wages for one year a preferred claim against a decedent's estate, is not inconsistent with the above-stated presumption. The act was intended to prefer a claim when duly established, not to change the rules of evidence or alter the quantum of proof.

4. The finding of an auditing judge upon a question of fact is entitled to as much weight as the verdict of a jury, and will be set aside only on such grounds as would justify the setting aside of such verdict.

January 4th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Philadelphia county :* Of January Term 1880, No. 93.

Appeal of Jane McConnell, administratrix of the estate of John Hamill, deceased, from a decree awarding to Eliza Fletcher certain sums claimed by her to be due as wages from the said estate.

On the adjudication of the account of Jane McConnell as administratrix, before PENROSE, J., evidence to the following effect was adduced : John Hamill was a tavern-keeper, very intemperate in his habits and subject to frequent attacks of *mania a potu.* While suffering from these attacks he required careful and constant nursing. His wife, being in delicate health, was unable to nurse her husband and at the same time discharge the household duties. In the autumn of 1870, Hamill agreed with his wife's sister, Eliza Fletcher, that she should assist in nursing him, in doing the work of the house and in attending bar, promising to pay her $4 a week for her services. Eliza Fletcher had before this time resided near by with her brother, in a house where she received and nursed patients suffering from certain complicated and dangerous diseases, from which occupation she was able to

earn from $15 to $25 a week.    How far she gave up this business when she agreed to do work for Hamill did not distinctly appear. Some of the witnesses testified that she lived almost altogther in her brother-in-law's house; others, that she still sometimes could be found at her former residence.    That she did perform the duties for which Hamill had hired her clearly appeared.    These she continued to perform until the summer of 1875.    Mrs. Hamill then died.    Two weeks after that event, Eliza Fletcher quarrelled with Hamill and left his house, returning to her brother's, where she resumed her business of nursing.    Hamill died on June 19th 1877.    Eliza Fletcher then claimed certain furniture in his house as belonging to her, and got some but not all she asked for.    She admitted that her wages for the first year she lived with Hamill had been paid, but presented this claim for the amount for her services during the remaining four years.

There was no evidence of any demand having been made by her upon Hamill for this amount prior to his death.

The auditing judge found the facts substantially as above, and allowed the amount of the claim, but found that owing to the payment of legal costs and certain preferred claims other than Eliza Fletcher's, the account showed a balance in favor of the accountant.

Exceptions were filed by the accountant to the allowance of Eliza Fletcher's claim, and sustained by the court *pro forma*. Eliza Fletcher then obtained leave to file exceptions *nunc pro tunc* to the allowance of certain credits to the accountant, the disallowance of which she claimed would result in a balance applicable to her debt.    Exceptions were accordingly filed by her, and after argument sustained, the exceptions of accountant being dismissed.

The account being recommitted to the auditing judge, he surcharged the accountant with $336.94, and ordered that from said sum one year's wages should be paid Eliza Fletcher as a preferred claim, and a dividend *pro rata* with the other creditors on the rest of her claim.    From this decree Jane McConnell, administratrix, took this appeal, assigning for error, inter alia, the allowance of Eliza Fletcher's claim.

*Richard S. Hunter*, for appellant.—A claim against a decedent's estate should be made out by testimony clear and reasonable beyond dispute; in this case the claim was not so made out.    It is highly improbable that this money is owing.    No witness swears that it has not been paid.    Now it is a very important and significant fact that Eliza Fletcher, according to her allegation, allowed her wages to accumulate for four years; that she took no acknowledgment of indebtedness from decedent; that she made no claim for wages upon decedent during the two years that elapsed between

[McConnell's Appeal.]

the time she claims to have left his service and his death, and this, notwithstanding the fact, as appears from the testimony, that she quarrelled with him when she left. She waited until both Mr. and Mrs. Hamill's mouths were closed by death. It is not to be presumed that claimant, if entitled to wages, received none for four years.

It has been decided that, where a person serves in the capacity of a domestic servant, and no demand for payment of wages is made by the servant for a considerable period after such service has terminated, the inference is either that the wages have been paid, or that the service was performed on the footing that no payment was to be made: Gough *v.* Findon, 7 Exch. 49; Sellen et ux. *v.* Norman, 4 C. & P. 80.

*Richard W. Clay*, for appellee.—The facts found by the court were amply sufficient to sustain the decree. The presumption said to exist by the English cases just cited, may indeed exist in England, where the law in relation to domestic servants differs in many respects from ours, and where all class distinctions are so rigidly drawn. No decision of any court in the United States has been found in which it has been held that any presumption of payment arises from the fact that the contract was one of hiring, and it is submitted that it is not in accordance with the spirit and policy of the law of this state. The 21st section of the Act of 24th February 1834, which establishes the order of distribution among the creditors of a decedent, and makes servants' wages for *one year* a preferred claim, is inconsistent with such a presumption: Martin's Appeal. 9 Casey 395. Our case is very similar to McCarley's Estate, 9 Phila. R. 318.

Even if such a presumption did usually exist it could not do so here. The relationship of the parties, and Hamill's irregular habits were sufficient to do away with any presumption of prompt payment.

Mr. Justice PAXSON delivered the opinion of the court, January 24th 1881.

The appellee claimed, in the court below, for four years' services as a domestic servant at four dollars per week. She admitted having been paid for the first year, but alleged she had not been paid any portion of her wages for the last four years. She left the service of her employer, Mr. Hamill, about two weeks after the death of his wife, in July 1875, and does not appear to have made any demand upon him during his life. After his death, and nearly two years after she left his employ, this claim was presented. It further appears the appellee was a sister of Hamill's wife, and about the time she left had a quarrel with the decedent. Her brother, Mr. Fletcher, who was her main witness to sustain

1 OUTERBRIDGE—3

her claim, says, in his testimony : " At the time of Mrs. Hamill's death, Eliza (the appellee) and Mr. Hamill had a quarrel—this was two weeks after she left—and never spoke to him again ; he died a year after ; she claimed her furniture which was there ; she got some, but not all ; all but two or three pieces which the arbitrator awarded to the estate."

The auditing judge found the contract of hiring, and that the services had been performed, upon which, the court below allowed the full amount of the appellee's claim.

We are not disposed to disturb the finding of fact. There was considerable conflict of testimony, but a verdict for such reason would not be set aside. The report of an auditor, or the finding of an auditing judge, is entitled to equal weight. The conclusion of the learned court, however, upon the facts, is not so satisfactory.

It was held, in Gough *v.* Findon, 7 Exch. 49, that " where a person serves in the capacity of a domestic servant, and no demand for payment of wages is made by the servant for a considerable period after such service has terminated, the inference is, either that the wages have been paid, or that the service was performed on the footing that no payment was to be made." Again, in Sellen *v.* Norman, 4 C. & P. 80, it was said by GAZELEE, J.: " In the regular course, if the servant has left a considerable time, the presumption is, that all the wages have been paid."

This is the well-settled rule in England. It was either overlooked by the court below, or considered to have no application here ; probably the latter, as it was ... d at bar that the rule, however firmly established in Eng... ' ' vas not in force in this country. No sufficient reason was shown in support of this view. Such platitudes, as " the spirit of our laws" and the " genius of our institutions" amount to nothing, for the reason, they are not applicable to the question we are considering. A presumption has been defined to be " an inference as to the existence of one fact not certainly known from the existence of some other fact known or proved, founded on a previous experience of their connection." The presumption referred to in the cases cited rests upon the known fact, that in England servants' wages, as a general rule, are paid at stated periods, and it is entirely immaterial whether such periods are weekly, monthly or yearly, and upon the further fact that a servant rarely leaves the service of an employer, and remains away for months or years, without a settlement of some sort with his or her employer, or at least a demand for payment. The same facts exist in this country, and there is, therefore, the same presumption. In either case it is a presumption which the law raises from a known state of facts, and a known course of dealing. It is, however, a presumption of fact merely, and liable to be rebutted.

In the case in hand there is nothing to rebut this presumption ;

[McConnell's Appeal.]

on the contrary there is much to strengthen it. There is the conceded fact that the first year's wages were paid. In view of this fact, it seems almost incredible that not a dollar of wages should have been paid for the next four years. The payment for the first year created a course of dealing which it is only fair to presume continued thereafter. It is at least sufficient to put the appellee upon some proof to show why she received nothing during the second and subsequent years. Did she demand her wages, and was she refused? This could hardly continue for four years, and not come to the knowledge of some one who could have been called as a witness, even if we admit the improbable supposition that the appellee would have worked for Mr. Hamill during all those years in the face of a denial of her wages. Did she agree to make him her banker? A most improbable thing, in view of the evidence produced by her of his neglect of business, heavy drinking and constant attacks of *mania a potu*. Then there was the fact of her connection by marriage with her employer; she was his sister-in-law, a fact not sufficient to overcome a contract relation, but pregnant with significance in view of her stale claim, made after her sister and brother-in-law were in the grave. Further, there was her quarrel with the latter, and a dispute about the furniture after his death, resulting in some sort of arbitration.

We are of opinion there was abundance in this case to raise such a presumption of payment, as to cast upon the appellee the duty of showing someʰ ‥ more than the mere contract of hiring. It is always possible ., ....ervant to show such contract, or what is equivalent, to prove services for which a promise to pay will be implied. Such claims may be made and such proof produced years after the death of the employer. Few persons take receipts for the payment of servants' wages, and the proof thereof, in many cases, would be exceedingly difficult. This of itself would not be sufficient to defeat a just claim, but it is a good reason why a presumption, based upon sound principles and the known rules which guide human conduct, should be applied.

It was urged that the 21st section of the Act of 24th February 1834, which makes servants' wages for one year a preferred claim against a decedent's estate, is inconsistent with this presumption. We do not so regard it. The act was not intended to change the rules of evidence, or regulate the quantum of proof. It means that when a claim for wages is established, as required by law, it shall be a preferred debt to the extent of one year's services. The claim of the appellee was improperly allowed.

The decree is reversed at the costs of the appellee, and it is ordered that distribution be made in accordance with this opinion.

GORDON, TRUNKEY and GREEN, JJ., dissent.