## Miller's Appeal.

1. Between parent and child the rule is, that there can be no recovery for services, boarding or the like, in the absence of an express contract to pay therefor; and where a son takes his decrepit parents into his house and supports them, no contract is implied. But if the father, before they go and afterward, repeatedly declares that he was to pay for their board, such declarations are evidence, and, with attendant circumstances, may be so direct and strong as to sufficiently establish an express contract.

2. The gist of such a contract is an actual agreement to pay, and if the sum be not expressed, it will be implied to be the value of the service rendered.

3. Where the evidence of the contract consisted of certain declarations of the father, that he might as well move to his son's "as to hire some one to take care of him and the old woman," and after moving, "I have to pay our boarding," "that he was paying for his boarding," "we are paying for our boarding," and the like, *Held*, to be sufficient evidence, with attendant circumstances, to establish an express contract to pay board for himself and wife.

4. In such case, declarations of the father made in the son's lifetime, but not in his presence, are inadmissible to prove a contract as to boarding more favorable to himself.

May 11th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Orphans' Court of *Cumberland county :* Of July Term 1882, No. 70.

Appeal by George H. Miller, administrator of Adam Miller, deceased, from a decree of said court dismissing his exceptions to the report of an auditor appointed to make distribution of the estate of the decedent, and confirming the report.

The following were the material facts :—On April 1, 1872, Adam Miller and wife, who had been keeping house together, went to live with their son George, with whom they remained until they died—Mrs. Miller, on December 2d 1876, aged 78 years, and Mr. Miller, on March 30th, 1879, aged 80 years. George Miller, in his account as administrator of his father's estate, claimed credit for the board of the wife of decedent from April 1st 1872, to December 2d 1876, at $2.50 per week—$600. —and for board of decedent from April 1st 1872, to March 30th 1879, at the same rate, $910, alleging that his father had agreed to pay $2.50 a week for each. The other distributees denied this contract, and an auditor was appointed to pass upon their exceptions to the administrator's account, and make distribution of the estate.

In proof of the contract, Miller introduced the evidence of numerous witnesses, who testified as to certain conversations held by them with Adam Miller, both before and after his removal, with his wife, to his son's house. The evidence was, that in these conversations, Adam Miller said to one of the witnesses : " I might as well move there (to George's) as to hire some one to take care of me and the old woman ; " to another, after moving, " I have to pay our boarding ; " to others, " that he paid for his boarding ; " " that he was paying for his boarding ; " " we are paying for our boarding." To a witness who lived in George Miller's family : " That all he had to do was to pay their boarding." Another testified : " Often when I was down there (at George Miller's), and talked about getting things, he (Adam Miller) said he had to pay his boarding."

The exceptants offered to prove by one Spahr, a grandson of the decedent, that in a conversation between witness' mother and Adam Miller, in the absence of George Miller, Adam said that George had money of his, the interest of which he had given for his board. Objected to. Evidence admitted. Exception. They further offered to prove by Jacob Settle and his daughter, a conversation between the witnesses and Adam Miller, in the absence of George, in which Adam said that George had $900 of his money, and was to board him for the interest on it, and that " the old lady was to work for her board." Objected to. Evidence admitted. Exception. Upon notice by the exceptants, a judgment note was produced by George Miller, dated April 3d 1872, for $900, drawn by him, and payable to

his father with interest, on April 1st 1873.   The auditor admitted the evidence of Spahr and Settle, on the ground that the declarations of Adam Miller, therein set forth, were against interest ; holding that the other testimony failed to prove a contract between Adam Miller and his son, for the payment of board, and, therefore, that these declarations of the father establishing the contract and its terms, relieved George from liability to account for the interest on the $900 from April 1st 1872, to March 30th 1879.   The auditor accordingly disallowed the administrator's claims of $600 for Mrs. Miller's board, and $910 for the decedent's, but gave him credit for $378, the interest accrued on the $900 note.

Exceptions filed to this report by George Miller were dismissed by the court below, HERMAN, P. J., delivering the opinion, and a decree was entered confirming the report ; whereupon Miller took this appeal, assigning for error the dismissal of his exceptions as above, and the decree of the court.

*Lemuel Todd* and *W. J. Shearer*, for appellant.—The adjudicated cases do not support the auditor, in his rejection of Miller's claim.   They simply rule that the law implies no contract between parent and child for work and boarding, but that there must be an express contract.   In this case there was an express contract, proved by evidence, clear, direct and positive. The auditor erred in assuming that the same evidence is required here, as is necessary to establish a parol contract for the sale of lands out of the statute of frauds.

*J. P. Rhoades* and *W. F. Sadler*, for appellees.—The declarations of Adam Miller, which were introduced in evidence, were not sufficient to establish the express contract, which is a pre-requisite to the right of a child to charge a parent for board and maintenance :   Lynn *v.* Lynn, 5 Casey 369 ; Hertzog *v.* Hertzog, Ib. 465 ; Bash *v.* Bash, 9 Barr 260 ; Leidig *v.* Coover's Exs., 11 Wr. 535 ; Mosteller's Appeal, 6 Casey, 473 ; Candor's Appeal, 5 W. & S. 514.   In none of these cases was the claim of the child for compensation allowed, and yet the expressions used were fully as much evidence of a contract as any attributed to Adam Miller.   There is no evidence that any one ever heard the father and son discuss the subject together.

Mr. Justice TRUNKEY delivered the opinion of the court, October 2d 1882.

Implied contracts are such as reason and justice dictate, and which the law presumes from the relations and circumstances of the parties.   Nothing is better settled than that the performance and receipt of services, or the furnishing of board, raises an

implied assumpsit by the one who receives to compensate the other, yet this implication may be rebutted by proof of facts which repel the idea of a contract. Ordinarily parents and children do not expect to pay or receive payment for acts of kindness to each other, nor do other members of a family. For services rendered by members of a family to each other no promise is implied for remuneration, because they were not performed in the expectation, by either party, that pecuniary compensation would be made or demanded. No action can be maintained for such services in the absence of an express contract or engagement to pay for them: Updike *v.* Titus, 2 Beasly 151; Smith *v.* Milligan, 43 Pa. St. 107; Butler *v.* Slam, 50 Pa. St. 456; Douglas' Appeal, 82 Pa. St. 169. Frequently, it has been said that "relationship, either by consanguinity or affinity, is a fact which tends to rebut the presumption which the law raises, that a promise to pay is intended when personal services are rendered. But, alone, it does not overcome that presumption except in the case of parent and child. In all other cases there must be evidence beyond the relationship that the creation of no debt was intended." The nearer the relationship the less expectation of payment, and greater strictness of proof to overcome the presumption. And when the parties are members of the same family the relationship excludes the implication of a promise. An instance of such exclusion is Duffey *v.* Duffey, 44 Pa. St. 399.

Between parent and child the rule is, that there can be no recovery for service, boarding, or the like, in the absence of an express contract to pay therefor. The degree of proof to establish it cannot be the same in all cases. Nor is a contract for the payment of money for services or goods, subject to the same rules respecting its proof as are applied to oral contracts for the conveyance or devise of land by a father to his son, as was the case in Harris *v.* Richey, 56 Pa. St. 395. When a son continues in his father's family and service after his majority, as before, he cannot recover wages, unless there be direct, clear and positive proof of an express contract. But there it has not been held essential that a witness was present with the parties face to face and heard their bargain. However, the circumstances require much stronger proof to establish a contract, than when the son had left his father's home, had done business for himself for years, and the father requested his return, care and service. In one case the circumstances are opposed to the idea of a contract, in the other they are corroborative of the father's declarations to third persons that he promised his son to pay him.

The question always is, whether the parties contemplated payment and dealt with each other as debtor and creditor. A

son who takes his decrepit parents into his house and supports them, is presumed to do so from the promptings of natural affection; no contract is implied. But if the father, before they go and afterward, repeatedly declares that he was to pay for their board, such declarations are evidence, and with the circumstances may be so direct and strong as to compel belief that he expressly agreed to pay for it. Loose declarations made to the son or others will not answer. That which may be only the expression of an intention to compensate is not evidence of an agreement to compensate. If he intended to pay and often said so to others, he was not bound. It must appear that he purposed to assume a legal obligation, capable of being enforced against him. A mother made a visit to her son in a distant state, remained some months and died there. She said that she intended to pay what was right for her boarding. It was held that "there is nothing like evidence of a contract in that :" Lynn *v.* Lynn, 29 Pa. St. 369. Had she said that before she went she had agreed to pay him for her boarding, there would have been evidence of a contract, and its sufficiency would have depended upon the proof of circumstances.

A contract to pay for services or boarding may be express and binding, without all the terms being defined. The gist is an actual agreement to pay, and if the sum be not expressed it will be implied to be the value. A contract of this kind should not be confounded with a parol contract for sale of land.

On April 1st 1872, Adam Miller and his wife went to live with their son George and remained with him during their respective lives. The mother died in December 1876, aged seventy-eight years, and the father in 1879, aged over eighty years. Before going to George's they had lived in a house of their own—their daughters had married and left them alone. The father was feeble, unable to cut his wood, and required some one to attend to him. His wife was able to do but little. One witness testified, "I knew old Mr. Miller. I had a conversation with him before he moved to George's. He says, 'I am moving to George's.' Says I, 'How is that?' He says, 'I might as well move there as hire somebody to take care of me and the old woman.'" Another witness who lived at George Miller's in 1872, testifies that soon after Adam Miller and his wife came there, he told her that he had it better here than when he lived by himself, had no care on his mind, and all he had to do, he said, "I have to pay our boarding." Numerous witnesses testify to his declarations at different times, "that he paid for his boarding," "that he was paying for his boarding," "we are paying our boarding," under circumstances showing that he was well aware of what he was saying. The evidence

is convincing that Adam Miller expressly contracted to pay for the board of himself and wife, that George kindly and faithfully performed his part, and that the amount claimed is reasonable and justly due. This appears to be a meritorious claim which ought not to be defeated by application of any principle found necessary to protect estates of decedents from false demands.

The learned and able auditor found that there was a contract by George to board his father and mother for the interest on a note for $900 and the services of the mother. That there was an actual contract is scarcely denied, and the exceptants were allowed to prove the declaration of Adam Miller, in absence of George, that the interest of the note was what he paid for the board. His declarations tending to establish a contract were proved; it was not competent for those claiming under him to prove other declarations of a contract more favorable to himself. All the declarations agree that there was a contract; those proved by appellant show a liability for the value of the boarding, and those by the appellees, a liability for less than one-fourth the value. It is fallacious to say that the latter were admissible, because the party made them against his interest; and the second and third specifications of error are sustained.

The findings of fact by the auditor, approved by the court below, are entitled to great weight and rarely are reversed. From the auditor's citation of authorities and reasoning, it is clear that if we agreed with him respecting the law of the evidence, we would, also, in his conclusion.

> Decree reversed, exceptions to the administrator's account dismissed and said account confirmed, and record remitted for further proceeding. Appellees to pay the costs of this appeal.