## Caskey v. Kineavy, Appellant.

*Master and servant—Claim for services—Family relationship—Presumption of payment—Evidence.*

1. In an action by a sister-in-law against a brother-in-law for services as housekeeper, family relationship will not be presumed, but must be proven as a fact.

2. In such a case the issue must be submitted to the jury where the claimant's evidence shows, as opposed to family relationship, that the service was rendered by request, that the claimant was not permitted to eat with the family at the common table, that the head of the family for years never exchanged a kindly word with her, and rarely, if ever, purchased any clothing or medical supplies for her.

*Master and servant—Wages—Presumption of payment.*

3. In an action by a sister-in-law against a brother-in-law for services as a housekeeper after the death of defendant's wife, evidence of certain periodic payments made monthly and semimonthly are not sufficient to raise a presumption of payment in full, where there is evidence to show an agreement for the payment of a monthly sum stated, and also evidence tending to show that the defendant regarded the sums paid to the plaintiff as not being in full for her services, and that he considered that she was entitled to something beyond the amounts paid.

Argued Nov. 20, 1914. Appeal, No. 260, Oct. T., 1914, by defendant, from judgment of C. P. Delaware Co., Dec. T., 1912, No. 197, on verdict for plaintiff in case of Theresa Caskey v. Robert Kineavy. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit for services as housekeeper. Before JOHNSON, P. J.

At the trial the evidence showed that the plaintiff was the sister-in-law of the defendant. Prior to the death of plaintiff's wife which occurred on February 11, 1909, the plaintiff had acted as housekeeper and these services were continued after the wife's death until the defendant's remarriage in 1912, when the plaintiff withdrew from the defendant's house.

Other facts appear by the opinion of the Superior Court.

The court charged in part as follows:

[According to her testimony, as we have said, and her case depends largely upon it, that some time after they came to the city of Chester there was a conversation between her and the defendant. From what I gathered from her statement, it was that it related to either a gratuity to be given her, or compensation for her service —it was not very clear which—that he, she understood, and as she says, he said, would deposit in some bank $300, and would afterwards continue to make deposits until it amounted to $1,000. No mention was made of the bank, so far as we recollect, or the time in which this $1,000 was to be deposited. That was the relation of her to the household which continued until—that relation continued substantially without any conversation between them, so far as we recollect, until somewhere about February 11, 1909, when the wife died. Up to that time, if we remember the testimony of the plaintiff, she does not speak of any conversation between the defendant and herself relating to what she was to be paid, if anything, for her service, save this talk about the $300 deposit in the bank.] [5] When the wife died, however, about February 11, 1909, she says that she had a conversation with him, or, at all events, he began to pay her money, and gave her at intervals, I think—my recollection of it is—somewhere about $5.00 a month. If I recollect the conversation that she says she had with him, it was that it related to her con-

tinuing or staying on. Some time along in August, 1912, the defendant married again, and after his marriage, or about that time, another conversation took place, which was a talk about her staying on, and from that time until she left on October 15, he paid her, as we remember, about $5.00, according to her statement, every two weeks. It culminated, however, in a conversation which she says took place between herself and the defendant about the time of her leaving, and that is a very important conversation, both for the plaintiff and for the defendant. She says, if we recall, that in that conversation—she does not state it very clearly, but the court gathered from what she said, and you will remember what she did say, that there was a conversation between them relating to her being compensated in some way for this service, and, if we remember, she said that he said he would make it all right, or he would do something about it, indicating that, according to her view—that he would settle it in some way, and she demanded $5,000, or $6,000; he said that was too much, or he could not pay it, and he would pay—if he did say he would pay—that he would pay something at intervals, and in the end offered her $50.00, which she refused to take, and they parted. Now, that is her case in the main. Her case rests, first—it is not disputed that she rendered this service; the extent of it is disputed to some extent; but that she did live in this household and render this service during all of this period is not seriously disputed. As we have said, the extent of it, as to whether she did all the cooking, and all of everything, the defendant says is not, as he understands, correct.

Now, in this state of her case, we say to you that so far as her claim prior to January 11, 1907, is concerned, you will pay no attention to that. The statute of limitations confines her to a recovery, if she can recover at all limited to the period since January 11, 1907. That was six years before the date of bringing

this suit. [Now, I think the court ought to say to you that so far as the period between January 11, 1907, is concerned, when the date begins from which she can, under any circumstances, recover for at all, until February 11, 1911——

Mr. Schaffer: Nine.

The Court: 1909. If I get mixed in these dates, let me know—between January 11, 1907, and February 11, 1909, in which there was no conversation between them as to any compensation for the service, or no talk between them about it, and no money paid, that belongs to a part of this claim that is a little different from the portion of it commencing February 11, 1909.] [6] [It is the law in Pennsylvania relating to domestic servants that there is a presumption that they be paid weekly, monthly, or triweekly, or at limited periods, and if nothing is paid and nothing said about it for a long time, and the parties part, and leave, or go away, then there is a presumption in law that it is paid, and the only evidence that there is in the case bearing upon the rebuttal of that presumption during this period is her statement that in the beginning he promised to deposit some money for her; that has some bearing. Not that he owes her any part of the money he proposed to deposit for her, if he did so propose, but it has some bearing upon whether or not there was a purpose and intention upon the part of the parties, one to receive, and the other to pay—that, coupled with what he said to her when they parted, about paying it, is the only evidence to rebut the legal presumption that she was to be paid during this period.] [7] Therefore we say to you that while you take it up all together, that part of the claim has a quality about it which the after part does not have. [That part of the claim from February 11, 1900, has about it this quality, of her right to recover—after the wife had died—about that time there was a conversation, she says, between the defendant and herself—no compensation was fixed—and from

what we gather from her, but little was said—we will take up his side of the case afterward—but little was said; but, however, at that time he did begin to pay her about once every two or three weeks, she says, $5.00 a week—$5.00—handed her $5.00, or sent $5.00 to her, and she says that after the wedding of the second wife he paid her $5.00 every two weeks, and that in a sense said that he would make some arrangement with her when she demanded pay, and gave her $50.00.] [8] Now, that is her case, and that is the testimony that bears upon it. [Now, if you believe what she says, then she has a prima facie case for compensation from January 11, 1907, to be worked out according to the instructions we have thus far laid down to you.] [9]

Now, the plaintiff—we say there is no serious question about her service, and there is none about her being there; we say there is some dispute about the extent of it. The defendant says that he had no such conversation with her in which she speaks about the $300—if we understood him, he said he didn't have any talk with her about it at all—no mention of the $300 being deposited in bank, or through accretion or further deposits. He further said he did not speak to her; had no conversation with her whatever for twenty years, and, if we recollect what he said, none at all for twenty years prior to February 11, 1909, at the death of the wife. He corroborates her in saying that after that period he began to send to her, if we recollect, or give to her—we don't recollect—it is immaterial which— $10.00 at that time—she said $5.00—neither kept any account it seems about the amount of this money, but they agree, both of them, there was some money; $5.00 at a time, or $10.00, paid to her or given to somebody to give to her at stated intervals,—she says—I am not sure that he didn't so say—he admits this, but he denies this conversation by which he agreed to make settlement with her, if she did so say, and he said she wanted $5,000 or $6,000, which he was unable to pay,

and didn't owe, and he offered to give her $50.00, and she declined to take it.

Now, that is his case. That is his answer. First, to the promise to deposit the money for her, and if there was—he denies—he does not deny, seriously deny, but admits the payment of these sums; differs as to the amount—denies the express promise to pay her in the future; admits giving her the $50.00; admits she demanded $5,000.

Now gentlemen, it will be for you to say under all of this testimony whether or not she is entitled, and to what, for this service that has been testified to as being rendered. [Now, much has been said about that there was no contract between the people, between this plaintiff and this defendant,—and that bears upon her right to recover. There is some weight always to be given to an argument such as that, but if she did do this work in his household for him, and it was done for him and for his benefit and his use, then that is just as though he had contracted, he knowing that she was doing it, and knowing that she was there, is just as though he had contracted for her to do it; for one who accepts the labor of another to their advantage, for their use, knowing it is being performed by them—then whatever that labor is worth in the market, there is just as much obligation to pay as though there was a contract in writing.] [10] When such a contract, however, is sought to be enforced, then the plaintiff must prove performance of the service, the knowledge of the other party that it was being performed for them, and its value. [Therefore, if you believe from the evidence, all the evidence in the case, that she was—that she did perform the duty of a servant or work, housekeeper, or whatever it was, in that household, for the defendant, then she will be entitled to recover whatever it was worth, subject, however, we say, to her overcoming the presumption, for we do feel that there is a presumption of law against this re-covery from January 11, 1907, to February 11, 1909;

and, unanswered, we would have to say to you that she could not recover, but if you find that this conversation, if it took place in the beginning, did relate to her future employment, or if you find that he did promise in the conversation when she was leaving to compensate her for it, then that repels or overcomes this presumption, and she would be entitled to recover whatever reasonably will compensate her for the service from January 11, 1907.] [11]

Now, in taking up this question, and it is one entirely for you, you will take into consideration the testimony,—the kind of service she performed.

It is said that—the defendant answers that she was not a servant of his; that she was a member of this household and her mother and her sister, who was his wife, and that he paid the doctor bills and regarded her as a member of the household, paid the doctor bills and other bills, furnished her clothing, as we remember, some—it is not very clear to what extent; and the defendant possibly does not remember to what extent—he kept no account, regarding that she was a member of the household—no accounts were kept between them; and his contention is that there was no such relation as master and servant at all, or master and housekeeper; that she was a member of his household where the wife lived up to her death, and the mother, and that the money that he gave her—we understood him—I don't know that he said it exactly—but we rather understood him to say that it was given for pin money or gratuity, and he didn't regard it as payment for her service.

Now, this is a question for you. Of course, if you find, from all the testimony that this was no relation of master and servant, master and domestic servant, but that she was a member of the household, and there was no understanding of any kind whatever—if you find there was no contract, no conversation, by which he had agreed, why, then you will possibly decide for the defendant, [but if you find that she did perform this service,

and that these payments were payments, and they have that quality about them—one paying at stated intervals has the quality about it of having been paid for some purpose—gifts are given sporadically, here and there, now and then; and there is another quality about these payments which we desire to call your attention to, in this case, because they have a bearing upon the relation of these parties, and they have a bearing upon whether or not they did understand, both of them, that if she was to be paid, this was her compensation, and that she accepted it, the $5.00 every month from 1911, February, 1911, when he began to pay it, until the marriage some time in October, 1912, and that $10.00 a week or whatever was paid after that—whether that was payment, and was accepted by her—all of these things enter into this case.] [12]

Verdict and judgment for plaintiff for $755.00. Defendant appealed.

*Errors assigned* among others were (5–12) above instructions, quoting them.

*John E. McDonough,* for appellant.—Where payments are made at stated intervals for domestic services, they are presumed to be in full settlement between the parties: Taylor v. Beatty, 202 Pa. 120; Barnes v. Pickett Hardware Co., 203 Pa. 570; Schrader v. Beatty, 206 Pa. 184.

*William I. Schaffer,* with him *John D. Carlile,* for appellee.—There was no presumption of payment: McConnell's App., 97 Pa. 31; Houck v. Houck, 99 Pa. 552; Ranninger's App., 118 Pa. 20.

OPINION BY KEPHART, J., April 19, 1915:

This is an action of assumpsit brought by a sister-in-law against a brother-in-law for service as a housekeeper. The evidence shows that service of this nature was rendered and it should be paid for unless a family

relationship existed or the presumption of payment prevented. Where the connection is that of brother-in-law and sister-in-law family relationship must be proven as a fact. The burden lies on the party who asserts it: Shumberger v. Hoy, 7 Pa. Superior Ct. 206; Shubart's Est., Walborn's App., 154 Pa. 230. Like all issues of fact tried by a jury the case is for their consideration, unless the evidence sustaining such relationship be of such character that but one conclusion can be reached therefrom, that is, that this relationship existed. Each case must to a great extent depend on its own facts. From the evidence here presented the court could not hold as a matter of law that the relationship existed. To say the least, the case is for the jury where the claimant's evidence shows, as opposed to family relationship, that the service was rendered by request, that the claimant was not permitted to eat with the family at the common table, that the head of the family for years never exchanged a kindly word with her, and rarely, if ever, purchased any clothing or medical supplies for her. Such life is not compatible with our idea of the life which should surround the members of the family, so that the existence of the so-called family relationship might be affirmatively determined. It represents more the life of the master and servant.

Appellant contends that even if this relationship did not exist there was a presumption of payment which would preclude this plaintiff from recovering. The law has been well settled in this state that "where a person serves in the capacity of a domestic servant, and no demand for payment of wages is made by the servant for a considerable period after such service has terminated, the inference is either that the wages have been paid, or that the service was performed on the footing that no payment was to be made:" McConnell's App., 97 Pa. 31; Houck v. Houck, 99 Pa. 552. This presumption is one of fact which may be rebutted. Part of the claim is for the time in which no compensation of

any kind was paid. This was up to 1909 when the defendant's wife, who was plaintiff's sister, died. After her death and until the defendant remarried, the evidence shows monthly payments of $5.00. After remarriage, and for a few months before claimant left, she received $5.00 every two weeks. Suit was brought immediately after the claimant left the defendant's house. No demand was made of the defendant for wages for the period prior to the wife's death; and unless the conversations had with this defendant immediately thereafter induced the claimant to forego the demand and continue in the service, she would not be entitled to recover for this period, it being almost three years before suit was instituted: McConnell's App., supra.

The periodic payments as here made, monthly and semimonthly, were sufficient to raise a presumption of payment. This presumption is in the nature of a receipt in full, which the law writes against the claimant. From the kind of service rendered and the customary manner of paying for such service, in order to avoid frauds that are easily perpetrated, the law has wisely created this barrier which claimants must remove by competent evidence. "It is a well-established rule that the wages for domestic service are presumed to be paid at stated periods, and that when a claim for such service is presented . . . . extending over any great length of time, the burden is upon the claimant to rebut the presumption. It, of course, is a presumption of fact which may be rebutted by competent evidence, but until satisfactory evidence is produced the presumption prevails and the claim must be disallowed:" Cummiskey's Est., 224 Pa. 509. Where it is admitted that payments in certain amounts have been regularly made to domestic servants and accepted by them, the presumption of payment thus raised by lapse of time, fortified by actual payments, adds to the difficulties claimant must overcome. We do not wish to be understood as holding that the evidence necessary to overcome a

receipt must be presented to rebut this presumption of payment; but, generally, such evidence must be presented from which the jury might reasonably find that the amounts paid periodically to the claimant were not intended as settlement in full and should to some extent explain why the payments were made and accepted. Whether or not the evidence exists to rebut the presumption is a question for the court: Gregory's Exrs. v. Commonwealth, 121 Pa. 611; Richards v. Walp, 221 Pa. 412. After a careful review of the testimony we are convinced that the claimant presented such evidence to the trial court, which, if believed by the jury, would warrant the finding that the presumption was overcome and would explain the lack of demand for compensation immediately after the wife's death, as noted earlier in this opinion. The conversations between defendant and plaintiff relative to her remaining in defendant's service, the offer to deposit a sum of money in her name and to add to it until it would reach a certain amount, and the promise made to the plaintiff when she left, to pay to her a certain sum in periods, are some of the circumstances which, with others, were submitted to the jury, from which they might find as a fact that the payments were not intended to be payments in full for the service rendered. This evidence was admitted not for the purpose of establishing an express contract with regard to these specific amounts, but as evidence tending to show that the defendant regarded the sums paid to the plaintiff as not being in full for her service and that he considered that she was entitled to something beyond the amounts paid. From the nature of the life which this plaintiff led at the defendant's home, it is not to be supposed that these offers were of a charitable nature.

Complaint as to the judge's charge is made in several of the assignments of error. While there are some misstatements of the evidence the misstatements are harmless errors. Had the appellant deemed any of much

weight, he should have then directed the court's attention thereto. As to the reference to the time the first conversation took place between the parties hereto, this the court endeavored to correct. We feel, however, that the charge as a whole was fair and no serious errors were made by the learned president judge such as would have prejudiced appellant's rights. Had appellant desired special instruction covering any phase of the law involved, he should have asked for it; and if the court failed to instruct as completely on the questions presented as appellant thought necessary, he had abundant opportunity to have the court complete its instructions.

The assignments of error are overruled and the judgment is affirmed at the cost of the appellant.