## Schreiber, Appellant, *v.* Northam.

*Master and servant—Payment of wages—Presumption of payment—Rebuttal—Inability to make demand.*

The presumption that a domestic servant has been paid, where no demand has been made for wages for a considerable period after the service has terminated, may be rebutted by evidence that there had been a demand for payment, that no payment had been made, and that a promise had been given for future payment.

Where it is the duty of a claimant to make a demand or institute suit, and the debtor moves to a place unknown, the inference as to staleness of claim will not arise from lack of demand and the failure to institute proceedings.

Argued April 12, 1915.    Appeal, No. 159, April T.,

484    SCHREIBER, Appellant, *v.* NORTHAM.

Statement of Facts—Opinion of the Court. [60 Pa. Superior Ct.
1915, by plaintiff, from judgment of C. P. Crawford Co., Sept. T., 1914, No. 38, for defendant n. o. v. in case of Elizabeth Schreiber v. John A. Northam, Executor of Albert Fabel, deceased. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Assumpsit for services.    Before PRATHER, P. J.

. The facts are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict in favor of Elizabeth Schreiber for treating feet for Mrs. Fable: 113 week at $1.00, $113.00; as domestic nurse for 28 weeks, at $7.00 a week, $196.00; for hospital service 28½ weeks at $5.00 per week, $142.50; interest from August 9, 1912, $54.76.    Total, $506.26.

Subsequently the court entered judgment for defendant n. o. v.

*Error assigned* was in entering judgment for defendant n. o. v.

*Otto Kohler,* for appellant, cited: McTamany's Est., 44 Pa. Superior Ct. 484.

*Frank J. Thomas,* for appellee, cited: Carpenter v. Hays, 153 Pa. 432; Pollock v. Ray, 85 Pa. 428; Coulston's Est., 161 Pa. 151; Taylor v. Beatty, 202 Pa. 120; McConnell's App., 97 Pa. 31.

OPINION BY KEPHART, J., July 21, 1915:

The claimant successfully established contracts with Albert Fabel, the decedent, for certain services to be rendered to his mother, and that such services were duly performed.    Do all of these services come under the rule which governs the services of a domestic?    As stated in McConnell's App., 97 Pa. 31: "Where a person serves in the capacity of a domestic servant, and no demand

for payment of wages is made by the servant for a considerable period after such service has terminated, the presumption is either that the wages have been paid, or that the service was to be performed on the footing that no demand was to be made": Cummiskey's Est., 224 Pa. 509.

Claimant had just returned from taking a course in chiropody and manicuring and was employed by Fabel to treat his mother's feet. The mother was an aged, feeble woman, her feet had become quite painful, requiring constant attention. Treatment was to be given each week. Some time afterwards, decedent's mother became infected with a cancer on her arm, which required additional care and attention. Plaintiff was employed to give this care and attention, her services being in the nature of domestic nursing. While thus employed the mother had an operation performed on her arm for this cancer, claimant assisting in the operation. The mother was later taken to the hospital. While in the hospital this claimant was further employed by Fabel to look after his mother, to render services in the nature of a companion. The decedent was anxious to have someone whom he could trust with his mother at all times, as he was frequently away from home. It was admitted in the argument that Fabel left Meadville shortly after his mother's death, and that his residence was unknown. His death occurred in Oklahoma in 1913. Claimant's services were rendered continously from May, 1909, to August, 1912.

The services performed in the treatment of the aged patient's feet should not be classed as ordinary domestic services, and it would not come under the duties of a domestic nurse, as those duties are generally known. The operator must have some skill to successfully treat an affliction such as this. The services would be in the nature of medical services and the presumption of payment does not arise against such services. From the testimony of the physician, and those who had seen the

claimant at her work, in addition to her professional duties as a chiropodist, she was employed and performed services as a domestic nurse. It does not appear that she did any of the ordinary duties of a house servant.

Assuming that these services might come under the rule as to domestics, which we do not here decide, there was evidence in the case from which the jury could infer that there had been a demand for payment and no payment had been made and a promise given for future payment; this to rebut the presumption of payment. When the mother was lying in the hospital close to the time of her death, she apparently took her son, this decedent, to task about "making things right with Lizzie." One can scarcely read all that was said by the mother, and considering the conduct of the son at the time of this conversation, without concluding that this claimant had been insisting upon payment, and that she had never received any satisfactory response from the son, and that it was necessary for the mother to impress upon the son's mind the duty of complying with his obligations. This testimony was properly submitted to the jury. When the son left, immediately after his mother's death, it was impossible to have made a claim, or have instituted an action against him, as his residence was apparently unknown. Where it is the duty of a claimant to make a demand or institute suit and the debtor moves to a place unknown, the inference as to staleness of claim will not arise from lack of demand and failure to institute proceedings. The learned trial judge entered judgment n. o. v. In doing so he was in error.

The judgment of the court below is reversed and is here entered on the verdict for the appellant, and at the cost of the appellee.