Hartman et ux. *v.* Moloney, Exr., Appellant.

Argued April 29, 1937.

Before Keller, P. J., Cun-
ningham, Baldrige, Stadtfeld, Parker, James and
Rhodes, JJ.

*John H. Lauer,* for appellant.

*Thomas F. Garrahan,* with him *H. W. McIntosh,* of
*McIntosh & Garrahan,* for appellees.

Opinion by James, J., September 29, 1937:

This is an action of assumpsit brought by Thomas L.
Hartman and Florence Hartman, his wife, against H.
A. Moloney, executor of the estate of Bridget T. Buerkle,
deceased, for room and board furnished decedent from
July 15, 1932 until her death on July 31, 1933. It was
not disputed that plaintiffs furnished the room and
board, but the claim was resisted on the theory that
decedent was working for her room and board. The jury
returned a verdict for the plaintiffs, defendant's mo-
tions for a new trial and judgment n. o. v. were refused,
and from the judgment entered on the verdict, defend-
ant has appealed.

Plaintiffs' testimony tends to establish the following
facts: Decedent was not related to the husband plain-
tiff, but was an aunt of the wife plaintiff. Shortly after
the death of her husband in 1926, decedent lived with
the plaintiffs for about six months, and paid for her
room and board. She later lived in Chicago with Mrs.
Margaret Byrne, her sister, to whom she paid $60 per

month for room and board. Then she lived with Miss Anna Dooner, another sister, with whom she divided the expenses of their apartment. Subsequently, because she was unable to pay her share of the expenses, she returned to Pittsburgh and lived with the Hartmans until her death in her eightieth year. Decedent was survived by four sisters, three living in Chicago and one at Perrysville, Pa.

Mrs. Cecelia Ley, a sister of Mrs. Hartman and niece to decedent, testified that she accompanied decedent on the train from Chicago; that "she said at the time she hadn't any money but she was going to live with the Hartmans because Mrs. Hartman offered her a home and she was going to live with the Hartmans, and as soon as she got any money she was going to pay them because she didn't want to live on charity. She said she was decidedly going to pay as soon as she had the money." She also testified: "Many times at length she spoke about the Hartmans and said how grateful she was that she had a place there, and the fact that she wasn't able to pay them at the time seemed to worry her...... She would speak about it often and said when she had money she was certainly going to pay Mr. Hartman because he carried her over the time when she hadn't any money and when she got her money she was going to pay him ......She would go to town to the bank or to the trust company to see if there was any money. There was property that she wanted to see if there was any return from those properties, any rent, and then she would come home rather discouraged and she said, 'Well, I didn't get any money again today,' and of course she would go to length to talk about the very fact that she couldn't pay and it bothered her."

Caroline Young, Mrs. Hartman's cousin, testified she had conversations with decedent; that "she told me the reason she came to Pittsburgh was to come here to see if she could sell the interest in the Buerkle estate, that

she was without funds and found that her bank account in Chicago wasn't any good any more; and the stocks she had in Chicago, when she tried to sell them she couldn't get anything for them and she was without funds and came to Pittsburgh to see if she couldn't get some money...... She was very much worried about it and it worried her a lot because she wasn't able to pay Hartmans board. She was very much worried about it ...... She told me she was without funds, that there wasn't any money coming in from her estate and she wasn't able to pay Mr. Hartman any board and felt very bad that she had to live with him that way, and offered notes and Tom refused to take them, because she knew Tom didn't want her to worry about this note hanging over her head and said just as soon as she was able to get hold of some money she would fix it up with Tom." Josephine Sauer, a step-daughter of decedent, stated that decedent worried because she wasn't able to pay and that she always wanted to pay her own way. Richard Wohleber, a brother of Mrs. Hartman, testified that he talked with decedent about a week before she died, at which time she said "she was very sorry she hadn't any money coming in from the estate, and that she wasn't able to pay Tom."

Appellant argues: First, that the testimony was insufficient to establish a contractual liability; second, that a family relationship existed; third, that the family relationship having been established, no affirmative evidence was submitted sufficient to rebut the presumption of a periodic payment; and, fourth, that plaintiffs having averred an express contract to furnish room and board, they cannot recover upon a quantum meruit basis. The first three shall be discussed together.

The mere fact that the plaintiff wife was a niece of decedent raises no such presumption of family relationship as would defeat the claim: *Evans's Estate*, 60 Pa. Superior Ct. 83; *Griffin's Estate*, 96 Pa. Superior Ct. 185; *Gibb's Estate*, 266 Pa. 485, 110 A. 236; *Kerr v.*

*Wilson,* 284 Pa. 541, 131 A. 468. To establish such connection as a family relationship, the burden lies on the party who asserts it: *Caskey v. Kineavy,* 60 Pa. Superior Ct. 87, 95. Having established that room and board were furnished, a presumption of a promise to pay arose, and the burden of proof was then cast upon appellant to establish such facts as would warrant an inference that the family relationship existed or that, for other reasons, the plaintiffs were not entitled to recover: *Evans's Estate,* supra. Appellant relies upon the testimony which indicated that decedent participated in the activities, conversations, visits, automobile trips, etc. of the Hartman family as establishing an actual family relationship and relies upon *Brown v. McCurdy,* 278 Pa. 19, 122 A. 169, as sustaining his position.

Without attempting to detail the facts in *Brown v. McCurdy,* supra, later distinguished in *Kerr v. Wilson,* supra, we find the facts in the present case of an entirely different character. Decedent left her sister, with whom she had lived in Chicago for several years, and came to live with the plaintiffs in the City of Pittsburgh. This change of residence was caused by decedent's lack of funds, due largely to her inability to obtain any money from her estate. She evidently found it far more congenial to stay with plaintiffs than with her sisters, three of whom were living in Chicago and another in Perrysville, Allegheny County, not far from the home of plaintiffs. This arrangement was sought by decedent, and that it was satisfactory is best established by the fact that she remained at the home of the plaintiffs until her death. Clearly, the mere proof of kind and considerate treatment of decedent by plaintiffs during this period was not sufficient to establish a "family relationship" as construed by our courts. Ordinarily, claims for room and board are presumed to be met when they are due, but it is a presumption of fact which may be rebutted by competent evidence. To overcome this presumption, plaintiffs rely upon declarations made by

decedent while traveling between Chicago and Pittsburgh and other declarations made while at Pittsburgh, which tend to establish that when decedent moved to plaintiffs' home she had no money; that while at plaintiffs' home she was unable to pay for her room and board, and there was no improvement in her financial condition down to the time of her death. These cannot be classified as "loose declarations," but rather definite acknowledgment by decedent of an agreement to pay for her room and board, of her failure and inability to make any payments, and her intention to pay when able to do so. This testimony was sufficient to rebut a presumption of payment at regular intervals.

Plaintiffs do not rest alone upon the presumption which arises from the furnishing of room and board, but are sustained by declarations made by decedent which not only recognized her liability, but her intention to pay as soon as she was financially able. This testimony is distinguishable from the facts of many cases cited by appellant, in which future rewards or legacies were promised. Decedent had only a small sum of money during the time she stayed with plaintiffs; consequently, cases in which the decedent did make payments or contributions or had adequate funds with which to pay are not in point. Viewing the testimony as a whole, it was ample to justify the finding of the jury in favor of the plaintiffs.

Plaintiffs' statement averred that decedent entered into an oral contract with them by the terms of which they agreed to furnish room and board for her and she "promised to pay a reasonable compensation therefor"; that in pursuance of said contract the room and board were furnished to, and accepted by, decedent and the said room and board furnished were reasonably worth the sum of $60 per month, which she promised to pay. The setting forth that the contract was oral was in compliance with section 9 of the Practice Act of May 14, 1915, P. L. 483. The expression "promised to pay a

reasonable compensation therefor" showed a plain intention to place plaintiffs' case on a pure quantum meruit basis. Whether we regard the language of the statement as either an express or implied agreement, the proof was in accordance with the averments. Plaintiffs are not required to show that all the terms were defined: *Miller's Appeal,* 100 Pa. 568, or that a certain sum was expressly agreed upon. All that was required was for them to show that the gist of the agreement was to pay for services rendered; the reasonable value of the services would determine the amount due: *Perkins v. Hasbrouck,* 155 Pa. 494, 26 A. 695; *Griffin's Estate,* supra. As we have heretofore noted, the relation of the parties was not such that a presumption arose that the room and board were voluntarily furnished. The case of *Witten v. Stout,* 284 Pa. 410, 131 A. 360, relied upon by appellant, is distinguishable from the case at bar. In that case, the statement averred that decedent and his wife had agreed "they would adopt her [meaning plaintiff therein] as their own child" and on their deaths would give her certain 'real and personal property. Under this averment, it was necessary to prove the specified compensation. In the case of *Nuebling v. Topton Boro.,* 323 Pa. 154, 185 A. 725, plaintiff was denied recovery because in fact no contract existed, since no ordinance or resolution was adopted and signed by the burgess.

The assignments of error are overruled and the judgment is affirmed.