## Emig's Estate. No. 2

*Kain, Kain & Kain,* for petitioner.
*Luria & Still* and *John E. Brenneman,* contra.

GROSS, P. J., September 1, 1939.—The petition of Harvey Eppley praying for a decree of specific performance of an alleged parol contract with decedent to devise to petitioner certain real estate, was filed in this court under the provisions of section 18 of the Fiduciaries Act of June 7, 1917, P. L. 447, on January 17, 1939. By the acceptance of service of a citation awarded thereon, Warren L. Leeking, as executor of the estate of decedent and also as a legatee under his will, as well as all other legatees named in the probated will of decedent, became parties respondent in this proceeding. . . .

### Discussion

Before considering the weight and legal effect of the evidence, we think it proper for us to state the fundamental principles of the law applicable to a proceeding of this kind.

"It is well settled that one may enter into a valid contract to dispose by will of his property, real or personal, in a particular way, and that such will is irrevocable and the contract will be specifically enforced": McGinley's Estate, 257 Pa. 478; Cridge's Estate, 289 Pa. 331. The

contract will be enforced whether it be in writing or parol if satisfactorily proven: Shroyer v. Smith, 204 Pa. 310; Tetlow's Estate, 321 Pa. 305. As to the quantity of proof required to establish the contract, the rule is laid down in Tetlow's Estate, 321 Pa. at page 310, by Justice Maxey, as follows:

"As to the proof required to establish a parol contract for the sale of real estate, this court, in *Bassler v. Niesly et al.*, 2 S. & R. 352, approved the instruction that the court below in that case gave the jury, stating (in an opinion by Mr. Chief Justice Tilghman) : 'The court charged, "that the contract might be proved by circumstances." The court said, that there was no need of *express* proof; but at the same time, the jury were told to find for the defendant, unless the contract were proved *clearly* and *to their entire satisfaction.* What more could be necessary? If conviction is brought home to the mind, it is sufficient; it is immaterial, whether the proof be the oath of a person who was present and heard the contract, or by evidence of a variety of circumstances, such as confessions of the party, payment of purchase money, delivery of possession, etc., which, taken altogether, leave the mind in no doubt as to the existence of the contract.' " The Supreme Court, in Calvert v. Eberly, Admr., 302 Pa. 152, 156, lays down the rule as follows:

"A parol contract of a decedent to give the plaintiff a portion of his estate in consideration of services rendered, even if capable of being enforced, can only be enforced when clearly proved by direct evidence, and when its terms are definite and certain. Claims of this nature should receive the closest and most careful scrutiny".

In Breniman v. Breniman et al., Execs., 281 Pa. 304, in discussing the measure of proof required to establish an oral contract by a father to convey land to his son, the Supreme Court said:

". . . the contract must be established not only by clear and satisfactory evidence, but also by such as is direct,

positive, definite and unambiguous". The court further said:

" 'The very nature of the relation, therefore, requires the contracts between parents and children to be proved by a kind of evidence that is very different from that which may be sufficient between strangers.' "

In Wright v. Nulton, 219 Pa. 253, the Supreme Court held as to the measure of proof in cases of this kind that:

"Where an alleged parol contract of sale is between a parent and son, the evidence of the contract must be clearer and stronger than that of a similar contract between strangers" (syllabus).

It has been strenuously argued by counsel for respondents that the admissions, or declarations, made by decedent to the various witnesses and offered in proof of the oral contract were not made in the presence of Harvey Eppley, petitioner, and were, therefore, mere "loose declarations" of decedent, and do not constitute such direct and positive evidence as to satisfactorily prove the contract and make its terms unambiguous, definite, and certain.

It is true that the admissions and declarations made by decedent, as testified to by the witnesses, were not made in the presence of petitioner. The argument so made by counsel is perfectly legitimate and might be persuasive if made before a jury, but it does not leave the mind of the court in any doubt as to the existence of the contract. In In re Griffin's Estate, 96 Pa. Superior Ct. 185, 188, in dealing with a similar situation, the court said:

"These declarations of the decedent, although made in the absence of the claimant, were competent testimony, and when taken in connection with the other testimony, are not such 'loose declarations' that it could be held as a matter of law that they were insufficient to support this contract: Miller's Appeal, supra [100 Pa. 568] ; Perkins v. Hasbrouck, supra [155 Pa. 494] ; Gerz's Exrx., v. Demarra's Exrs., 162 Pa. 530."

The most recent case dealing with the weight of declarations of this kind is that of Keller's Estate, 335 Pa.

196, where a decedent in her lifetime acknowledged to one witness that she was indebted to claimant for personal services and gave the latter checks in payment thereof. It was held that this was competent evidence, together with other evidence, to support an auditor's finding that the services were of the value of the amount of the checks and that the claim was a valid debt of the estate. The other evidence in this case consisted of a conversation which decedent had with her attorney in which she expressed a desire to convey real estate to claimant in payment of the claim, but because of the necessity for her husband to join in the conveyance it was impossible for her to do so. See also Glanz's Estate, 6 Sadler 15, and Harrington v. Hickman, 148 Pa. 401.

In the instant proceeding, decedent did not only make one admission to a single individual, but reiterated his admissions to numerous individuals on various occasions covering the period of time both before and after petitioner was put in possession of the premises. It may be true that, if we considered the testimony of each witness independently of the other, no one witness' testimony in itself would measure up to that standard of proof required to establish the contract and definitely fix its terms, but when the testimony of all the witnesses is considered together, and along with a variety of other circumstances, either admitted or conclusively proven by uncontradicted testimony, the mind of the court, as before stated, is left in no doubt as to the existence of the contract. By "a variety of other circumstances," the court has in mind the fact that decedent was growing old; was living a bachelor's life; had no issue, his nearest relatives being nephews and nieces; had no well-regulated home; wanted to sell the "Strack property"; had made a will on February 28, 1936, devising it to petitioner; had put petitioner in full, exclusive, and continuous possession of the premises; allowed petitioner to rent part of the property and collect the rents for his own use; allowed petitioner to have the property assessed in his own name, pay

the taxes thereon, and make extensive and valuable improvements thereto; went to live, made his home with petitioner and received boarding and lodging from petitioner from December 21, 1937, until his death, November 22, 1938, and above all, had a friendly and sympathetic interest in the welfare of petitioner, because petitioner had once resided on decedent's farm, was a cripple, and would probably need help as he grew older. Lastly, it will be observed that the one answer admits the alleged oral contract, except insofar as it applied to the frame house, while the other answer, without denying the existence of the contract, only demands proof thereof.

The declarations of decedent, taken in connection with the above circumstances, we think fully satisfy the standard of proof laid down by our appellate courts, required in cases of this kind.

Having found that the evidence is ample and sufficient to establish an oral agreement between decedent and petitioner, the further question arises, is the evidence sufficient to meet the requirements of the statute of frauds of March 21, 1772, 1 Sm. L. 389, and thus permit its specific enforcement? If it is not, petitioner is not entitled to the real estate: Breniman v. Breniman et al., Execs., supra. Specific performance of a parol contract for the sale of land will be decreed by the orphans' court under section 18(e) of the Fiduciaries Act of June 7, 1917, P. L. 447, under the circumstances quoted from Hart et al. v. Carroll, 85 Pa. 508, in the fertile opinion of Justice Maxey in Tetlow's Estate, supra, as follows:

" 'In order to take a parol contract for the sale of lands out of the operation of the statute of frauds, its terms must be shown by full, complete, satisfactory and indubitable proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and at or immediately after the time it was made, the

fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust.' " In Byrne's Estate, 122 Pa. Superior Ct. 413, 416, the court elaborates on the above-stated rule, as follows:

"There is no dispute over the proposition that an oral agreement to give land as compensation for services to be rendered is enforceable only if it is followed by exclusive possession of the land and the making of improvements which cannot be adequately compensated in damages: Morrish et al. v. Price et ux., 293 Pa. 169," or, "If the terms of the agreement had been put in writing in the form of a will, that would be deemed a contract within the statute", citing among others, Brinker v. Brinker, 7 Pa. 53, and Smith v. Tuit, 127 Pa. 341, to which we add, as holding the same principle, Shroyer v. Smith, 204 Pa. 310, and Tetlow's Estate, supra.

Petitioner claims, and we think rightly so, that the evidence satisfies all the conditions required by the above-quoted authorities, to wit, the agreement and the terms thereof shown by full, complete, satisfactory, and indubitable proof; that the devise to petitioner, contained in decedent's will of February 28, 1938, is a sufficient memorandum in writing within the meaning of the statute of frauds and defines the boundaries and indicates the quantity of land covered by the contract; that the consideration is clearly and definitely fixed therein; that the possession of the premises was taken by petitioner in pursuance to the contract; that the change of possession was notorious, exclusive, continuous, and maintained; that petitioner made exclusive and valuable improvements thereto and that he performed his part of the contract by giving decedent a home, maintaining and supporting him for almost one year prior to his death.

Of course, a decree for specific performance is not a matter of right, but of grace, and rests within the sound discretion of the chancellor, and a decree will not be entered where his conscience does not approve the transaction, or where the law side of the court affords a complete and adequate remedy, which we think it does not do in this case.

A full consideration of the terms of the contract leads us to the conclusion that it was made in good faith between decedent and petitioner; that it was not inequitable or unjust in itself, or rendered so by matters subsequently occurring; that the contract was so far executed that it would, in the conscience of the court, be against equity to rescind the same, and that petitioner is entitled to the relief prayed for in his petition. Wherefore, we enter the following decree:

And now, to wit, September 1, 1939, upon consideration of the facts averred in the petition, answer, and testimony, specific performance of the contract between decedent and petitioner, Harvey Eppley, as alleged in the petition filed in this proceeding, is decreed, and Warren L. Leeking, executor of the estate of William E. Emig, decedent, is directed to execute and deliver within a period of 30 days from the date of this decree, to said Harvey Eppley, petitioner, a deed of conveyance, conveying to said Harvey Eppley all the right, title, and interest of said decedent in and to that certain tract of land with the buildings and improvements thereon erected, situate in Jackson Township, York County, Pennsylvania, bounded and described as follows, to wit: [Here follows the description of the land].

Said deed to have the same force and effect to pass and invest the estate intended as if the same had been executed by decedent in his lifetime.

The costs of this proceeding to be paid by the estate of decedent.

An exception is granted to respondents to the action of the court in this regard.