## Shroyer, Appellant, *v.* Smith.

*Statute of frauds—Memorandum in writing —Will—Parol contract—Evidence—Party deed—Witness—Ejectment.*

In an action of ejectment it appeared that the plaintiff claimed title by a deed from his father, and the defendant, a nephew of the plaintiff, claimed title under a parol contract made with his grandfather, plaintiff's grantor, long before the date of the deed to plaintiff. Defendant's mother testified that defendant had learned the trade of blacksmithing, and that shortly after he came of age his grandfather, in the presence of the witness, orally agreed that if defendant would give up his trade, and would come and live with him and work for him, that he would leave him by will the farm in controversy. Other witnesses testified to declarations of the grandfather confirming such a parol contract. There was also offered

in evidence a paper signed by the grandfather which purported to be a will, by which he left the land in question to defendant. Defendant was permitted to testify in his own behalf although the plaintiff had not called any witness to testify to any matter which had occurred before the death of the grandfather. *Held* (1) that the evidence was sufficient to sustain a verdict for defendant; (2) that the will was a sufficient memorandum in writing, within the meaning of the statute of frauds; (3) that the defendant was an incompetent witness.

Argued Oct. 20, 1902. Appeal, No. 109, Oct. T., 1902, by plaintiff, from judgment of C. P. Greene Co., April T., 1898, No. 184, on verdict for defendant in case of David Shroyer and George B. Shroyer v. William D. Smith. Before Mc-COLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Ejectment for land in Cumberland township. Before CRAWFORD, P. J.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in permitting the defendant to be sworn as a witness, and various instructions.

*R. F. Downey*, with him *James E. Sayers*, for appellant, cited as to the statute of frauds : Hart v. Carroll, 85 Pa. 508 ; Sample v. Horlacher, 177 Pa. 247 ; Myers v. Byerly, 45 Pa. 368 ; Spencer's App., 80 Pa. 317 ; Workman v. Guthrie, 29 Pa. 495 ; Chadwick v. Felt, 35 Pa. 305 ; Hill v. Meyers, 43 Pa. 170 ; McCormick's App., 57 Pa. 54 ; Bowers v. Bowers, 95 Pa. 477 ; Moyer's App., 105 Pa. 432 ; Smith v. Tuit, 127 Pa. 341 ; Brinker v. Brinker, 7 Pa. 53.

Cited as to the competency of defendant : Act of June 11, 1891, P. L. 287.

*J. B. Donley*, with him *T. S. Crago* and *D. S. Walton*, for appellee, cited as to the statute of frauds : Johnson v. Mc-Cue, 34 Pa. 180 ; Smith v. Tuit, 127 Pa. 341 ; Brinker v. Brinker, 7 Pa. 53 ; Milliken v. Dravo, 67 Pa. 230.

Cited as to the testimony of defendant : Jackson v. Payne, 114 Pa. 67.

OPINION BY MR. JUSTICE MESTREZAT, January 5, 1903 :
This was an action of ejectment brought April 1, 1898, by

David Shroyer and George B. Shroyer against William D.
Smith for (quoting from præcipe) " a tract of land situate in
Cumberland township, Greene county, Pennsylvania, adjoining
lands of J. H. Rea on the south and west; lands of Thomas
Hawkins on the west and north; lands of W. C. Huston on
the north and east and land formerly owned by Barnhart, con-
taining seventy-three acres, more or less." Before the trial of
the case in November, 1901, David Shroyer died and his name
was stricken from the record as a party plaintiff. Both parties
to the record, as thus amended, claimed title to the premises in
dispute through David Shroyer, the father of the plaintiff and
the grandfather of the defendant, to whom the land was con-
veyed by Johnson Waycoff, by deed dated September 20, 1884,
and duly recorded in the recorder's office of Greene county.
The plaintiff's title is founded upon a deed from his father to
him, dated November 4, 1897, and duly recorded, by which the
land in controversy was conveyed " to the said George B.
Shroyer for life and at his death to his wife Elizabeth Shroyer,
if she survive him and remains his widow, to her for life and at
her death or upon her remarriage then the reversion and re-
mainder to the use of Edward C. Shroyer and John Shroyer,
children of the said George B. Shroyer and Elizabeth Shroyer,
in equal shares in fee, to them, their heirs and assigns forever."
The plaintiff put in evidence the record of the deed and relied
upon it as his right to recover in this action.

The defendant, William D. Smith, claimed the premises by
virtue of an alleged parol contract entered into between him-
self and David Shroyer just before or about the time he was
of age in 1884, by the terms of which Shroyer was to purchase
a farm and devise it to Smith, in consideration of which the lat-
ter was to give up his trade of blacksmith, remove to the farm
with his grandparents and care for them and work and manage
the farm until their death or they were done with the farm. It
is alleged by the defendant that in pursuance of said contract,
Shroyer purchased the farm in dispute, known as the "Harper
farm," in 1884, and executed a will, dated March 16, 1887,
by which he devised said farm to Smith; that the latter re-
moved to the farm with his grandparents and took possession
of it, and has fully and faithfully complied with all the stipu-
lations of the contract to be performed by him.

It is claimed by the defendant and his evidence tended to show that at the age of thirteen months he became a member of his grandfather's family, and that when he was between ten and eleven years of age, his parents about removing west, permitted him to remain with his grandparents in consideration of the latter agreeing to give him $4,000 and certain personal property when he became of age. It further appears from the testimony that Smith continued to reside on the "Harper farm" with his grandparents until the death of his grandmother in 1897, and that he still remains in possession of the farm. Prior to the removal of the parties to the farm, at the suggestion of his grandfather Smith learned the blacksmith trade.

The right of the plaintiff to recover was also resisted by defendant on the ground that David Shroyer, at the time he executed and delivered the deed to his son, the plaintiff, did not have sufficient mental capacity to execute the deed, and that it was procured through the undue influence of his son. Mr. Shroyer's wife died September 2, 1897. He left his grandson's home September 6, and has since resided with the plaintiff.

The two questions thus raised by the defense, to wit: the mental incapacity of David Shroyer at the time he executed the deed to his son, as well as the undue influence exercised upon him by the latter at that time, and the existence and sufficiency of the contract between David Shroyer and his grandson and the fulfillment of its terms by the latter, were submitted to the jury by the learned trial judge in a clear and adequate charge. The verdict was in favor of the defendant, and a new trial having been refused, judgment was entered on the finding of the jury. The plaintiff appealed.

The assignments of error suggest two propositions for consideration: (1) Was the evidence, if believed by the jury, sufficient to establish the alleged agreement between David Shroyer and his grandson, and if so, was the contract within the statute of frauds? (2) Was the defendant a competent witness under the Act of June 11, 1891, P. L. 287, to testify to matters occurring in the lifetime of David Shroyer?

The principal and only witnesses on the part of the defendant, who were present at the time the agreement was made, were the defendant and Mrs. Coil, his mother. The latter testified

at some length, giving the arrangement under which the de-
fendant as an infant was taken to his grandfather's home, and
detailing various conversations between her father and her son
leading up to and terminating in the contract which is set up
here as a defense to this action. She testified that under the
agreement the defendant " was to live with them (his grand-
parents) and farm and work for them, and when they were
gone, they would give him the farm ; " that he was to get the
farm by will; that he was then living with his grandfather in
Carmichaels, and the latter requested him to leave his trade
and go with his grandparents to the " Harper farm," which he
did. The date of the contract, as fixed by the witness, was in
1884, at or about the time the defendant arrived at the age of
twenty-one years. She also testified that her father told her
in the presence of her son that in compliance with the contract,
he had made a will and devised the farm to the defendant, and
that he would get it when he (her father) was gone. The de-
fendant in his deposition, taken under a rule before the death
of his grandfather, substantially corroborates his mother as to
the terms of the contract between him and his grandfather.
He says that at the time the agreement was made and he en-
tered upon the performance of it, he had acquired the blacksmith
trade ; that the inducement to leave his trade was the farm
which he was to get by will. He further says that his grand-
father told him " he had willed the farm to me and I would
get it. He would see that I got it." The witness speaks of
the several efforts made by his grandfather to purchase a farm
before he bought the " Harper farm," to which he removed
with his grandparents in pursuance of the agreement. Smith
also testifies that he performed his part of the contract faith-
fully ; that his grandfather resided with him until after the
death of his grandmother in 1897, when he left without cause
and went to the home of the plaintiff, where he lived until his
death.

In addition to this testimony, other witnesses were called who
testified to frequent conversations with David Shroyer in which
he admitted the contract between him and his grandson and
his intention to carry out its terms.

If the testimony is believed, the jury was fully warranted
in finding that the contract between David Shroyer and the

defendant was established in all its terms. The parties were brought face to face and the evidence disclosed a complete contract made by them. It also authorized the finding that the defendant had performed his part of the agreement. It is true that David Shroyer left the home of his grandson and resided with the plaintiff during the last four years of his life, but there was no sufficient reason, in the judgment of the jury, for his action in doing so.

It clearly appears, if the witnesses are credible, that David Shroyer had frequently admitted making the contract with his grandson, and that in pursuance thereof he had made a will, devising the "Harper farm" to the defendant. This testimony is supplemented by a paper in evidence, purporting to be the last will of "David Shroyer of Cumberland township, Greene County, Pa.," dated March 16, 1887, in which he devises "to William D. Smith the farm that I live on and is known as the Harper farm, adjoining lands of T. H. Hawkins, Wilson Huston, and others, also all my personal property that is thereon at my decease." The paper was in proper form as a testamentary disposition of property.

It is contended by the learned counsel for the appellant that the will is not a sufficient writing to take the contract out of the statute of frauds; that it "says nothing about the possession of any prior contract relating to the same; it does not define the quantity of land; it is entirely deficient without parol testimony, to take it out of the statute of frauds," and that the description is not sufficient to locate the land. It is not necessary that the will should set forth the possession of the premises by the devisees or that there was a contract. These facts must appear but may be shown by parol proof. Testimony was introduced to establish the contract and to show that the devisee took such possession of the land as the agreement required in 1884, and has since continued such possession of it till the present time. This was followed by testimony, believed by the jury, that the will was made pursuant to and in conformity with the terms of the contract. The will, therefore, became a writing embracing the terms of the agreement, and satisfied the statute of frauds: Brinker v. Brinker, 7 Pa. 53; Smith v. Tuit, 127 Pa. 341.

We do not agree with appellant's counsel that the will is not sufficiently definite as to the quantity of the land or as to de-

scription of the locality of the premises. It will be observed that it was similar to, and about as definite as, the description in the præcipe in this case. The will recites the fact that David Shroyer is "of Cumberland township, Greene county, Pa.," and devises "the farm that I live on and is known as the Harper farm, adjoining lands of T. H. Hawkins, Wilson Huston and others." So far as the will discloses the fact, this is the only real estate Shroyer possessed.

It follows from what has been said that the court below committed no error in submitting to the jury the evidence introduced to establish the contract and in sustaining the verdict in that branch of the case.

The defendant was offered as a witness in his own behalf. His competency being objected to, the court below ruled as follows: "I will rule he is competent to testify to any facts occurring in the lifetime of David Shroyer in presence of George Shroyer." From this ruling it is evident that the learned trial judge thought the defendant was made competent by the act of June 11, 1891. Both parties claim title under David Shroyer who was dead at the time of the trial. The plaintiff claimed by deed and the right of David Shroyer to make that deed was the matter in controversy. Shroyer was dead and the defendant, whose interest is adverse to Shroyer's right to grant the premises, was offered as a witness in the case. His interest was adverse to the right of Shroyer to convey and he was therefore incompetent to testify under clause (e) of paragraph 5 of the act of May 23, 1887, Purdon, 817 : Baldwin v. Stier, 191 Pa. 432; Myers v. Litts, 195 Pa. 595. His incompetency to testify under the facts disclosed by the record was not removed by the act of 1891. The defendant under this act could testify to any relevant matter occurring before the death of David Shroyer only if such matter occurred between himself and another person or in the presence or hearing of another person who had been called and testified to such matter against the defendant. Under such circumstances the act very properly permits the surviving party to testify. The inequality of the parties created by the death of one of them seals the lips of the other; but when that inequality has been removed by a living and competent witness who testifies against the surviving party to any relevant matter occurring in the lifetime of the deceased

between the witness and the deceased or in the presence of the witness, the competency of the other and remaining party to the transaction is restored by the act 1891, to the extent of permitting him to protect himself against the testimony of his adversary's witness. Here, however, when the defendant testified his incompetency had not been removed by the testimony of any witness called by the plaintiff to testify to any matter occurring between the defendant and the witness or in the presence of the latter and which had occurred before the death of David Shroyer. The defendant was, therefore, clearly excluded as a witness by the act of 1887, and was not made competent to testify under the act of 1891. Nor was the error in admitting him to testify cured by the admission of the defendant's deposition, which was clearly competent. It is conceded by the appellee's counsel that Smith's " testimony itself was very material to the defendant's case." We therefore cannot assume that its admission was "harmless error," or that it did not injuriously affect the plaintiff's case.

If the defendant's title to the premises is sustained, the question of undue influence exercised by the plaintiff upon David Shroyer and the condition of the latter's mind when he executed and delivered the deed to his son become immaterial. These matters were properly disposed of by the learned trial judge.

The tenth assignment of error is the only one having any merit, and for the reasons stated, it is sustained and the judgment is reversed with a venire facias de novo.