## Keller's Estate.

Submitted March 29, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Leslie R. Himes, E. O. Golden* and *Harry C. Golden,* for appellant.

*D. M. Geist,* with him *H. A. Heilman,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 25, 1939:

Frank J. Keller appeals from the final order of the Orphans' Court of Armstrong County, overruling his exceptions to the auditor's report in the Estate of Mary E. Keller, his deceased wife, and confirming that report absolutely.

Mary E. Keller died testate on September 11, 1934, leaving to survive her, her husband and collateral relatives. Letters testamentary were issued to Annie B. Davis, sister of the testatrix. Aside from some other provisions of the will, not in controversy here, the executrix was directed to convert the real and personal property into cash, one-half of the cash being bequeathed to the testatrix's husband Frank, and the other half to her sister Annie and the latter's daughter. Frank J. Keller elected to take against his wife's will.

The controversy in this case arises out of the signing and delivering on August 14, 1934, of two checks by Mrs. Keller to her sister Annie, one in the amount of $1,900, drawn on the First National Bank of New Kensington, and the other in the amount of $2,000, drawn on the First National Bank of New Bethlehem, both payable to the order of Annie B. Davis. On September 5, 1934, Mrs. Keller suffered a stroke of paralysis, and thereafter was physically helpless and mentally unfit to transact business. On September 7th, Mrs. Davis secured payment of the $2,000 check at the First National Bank of New Bethlehem. On that date there was only $50 in Mrs. Keller's checking account and an official of the bank permitted Mrs. Davis to have access to Mrs. Keller's safe deposit box for the purpose of obtaining the latter's passbook for her savings account, which had a balance of $2,050. Mrs. Davis had Mrs. Keller's key to the safe deposit box. Thereupon, Mrs. Davis presented to the bank the $2,000 check together

with the passbook and had this amount transferred from Mrs. Keller's account to her account.

Mr. Keller filed a bill in equity against Mrs. Davis and the First National Bank of New Bethlehem to compel repayment to the Estate of Mary E. Keller of the $2,000 withdrawn from decedent's savings account. The bill in equity was dismissed by the Common Pleas Court of Armstrong County, but on appeal to the Superior Court, the decree was reversed (123 Pa. Superior Ct. 240), that court stating, inter alia: ". . . Without prejudice to the right of the said Annie B. Davis, on the repayment by her of the said sum of $2,000 to the estate of Mary E. Keller, or on the repayment of the same by the bank to the estate of Mary E. Keller and the repayment of the said sum to the bank by said Annie B. Davis, to present check against the estate of Mary E. Keller, as a claim, and recover upon the same, along with other debts of the decedent, if she is able to establish that it represented a valid and existing debt against the said decedent. If it should appear, on the settlement of the estate, that the check was not given in payment of a debt or obligation due by Mrs. Keller to Mrs. Davis, but was a gift, the death of the drawer would render it incollectible."

The other check drawn on the First National Bank of New Kensington was not paid or cashed.

The auditor found, inter alia, these facts, to which exceptions were taken by Mr. Keller, that the sum of $3,900, the aggregate amount of the $2,000 and $1,900 checks, had been given to Mrs. Davis in payment of personal services rendered by her "to decedent, to decedent's daughter and to decedent's former husband who was badly crippled as a result of an accident"; that "there was no express contract for the payment of said services, but decedent in 1928 stated to her sister, Mrs. Maude Sedgwick, that Annie B. Davis had been very good to her and had taken care of her, and that she felt

she owed her something for doing that, that she felt she wanted to give what money she had to Annie when she could arrange it, and that she wanted to pay her for what she had done"; and that in the early spring of 1934 Mrs. Keller consulted an attorney with reference to the contemplated conveyance by her to Mrs. Davis of two lots which Mrs. Keller owned but "when informed that her husband's joinder in the deed would be necessary," Mrs. Keller "expressed surprise and stated that she had always intended to make a deed to the real estate to Mrs. Davis, that she owed her that and even more than the value of the property," and that she "further said that if that was the case she would have to let it go, but would have to do something."

After deducting auditing costs and preferred claims against the estate, the auditor awarded the balance, to wit: $3,350.45 to Mrs. Davis, on account of her claim, his conclusion of law, relative to this claim, being as follows: "The claim of Annie B. Davis for services rendered decedent, and her family, in the aggregate amount of $3,900, is a valid debt of the estate, but only a general claim against the same, and after the payment of the costs of audit and the preferred claims above mentioned, the balance of the cash fund for distribution should be awarded to Mrs. Davis on account of said claim."

Mr. Keller's exceptions to the auditor's report were overruled and the report was confirmed absolutely. This appeal followed.

The only question in this case is: "Does the record contain competent evidence sufficient to support the findings of fact by the auditor?" We agree with the court below that it does. That the decedent stated to witnesses that Annie B. Davis (the appellee) had taken care of her, that she was indebted to her for it and that she intended to pay her, is clearly proved. Some of this evidence is already referred to.

Appellant argues: "There is no evidence of the value of the services [rendered by the claimant] or the extent or duration of the services." On this point the testimony of D. M. Geist, an attorney, is of some probative value. He stated that when, as already noted, Mrs. Keller solicited him to draw a deed from her to Mrs. Davis, conveying two lots of ground (which purpose was not carried out, supra), she declared that the value of Mrs. Davis' services exceeded the value of the lots. In the appraisement made on October 30, 1934, after Mrs. Keller's death, these two lots were appraised at $1,800.

As to the checks in controversy, the court below aptly said: "We cannot regard the checks drawn to the order of the claimant as presumptive evidence that they were given in payment of a debt, or for cash received at that time. However, they are competent and material evidence, together with other evidence in the case, from which an inference may be drawn as to the non-probability of the checks having been given for any other purpose than the payment of a debt. In addition to this, we have positive statements made by the decedent within a year before her death, detailing the services rendered, and further, with an emphatic statement that she owed money to the claimant for services rendered, and intended to pay the same during her lifetime. It is true that there is no evidence as to any value set upon the services at the time they were rendered. However, the value was fixed by the decedent herself, at the time of the signing and delivery of the checks."

In the case of *Ritchie v. Deposit & Trust Co.*, 189 Pa. 410, 42 A. 20, which was an action against an administrator, on a check given by a decedent in his lifetime, this Court said: "The mere possession of the check by the plaintiff, to whose order it was drawn, was presumptive evidence that it was given in payment of a debt, or was given for cash received for it at the time: *Gettysburg National Bank v. Kuhns*, 62 Pa. 88; *Lowrey v.*

*Robinson,* 141 Pa. 189, and many other cases. In addition to this presumption there was considerable proof of a consideration of boarding, nursing and attendance on a number of occasions. The learned court below left it to the jury to say whether the check was given in the circumstances claimed by the plaintiff and for a consideration, or whether it was given without any consideration or for a partial consideration, charging that if it was given without any consideration they should find a verdict for the defendant, and if for a partial consideration they should find a verdict to that extent only. This was all the defendant could possibly ask, and clearly was not error. The case was necessarily for the jury."

It is true, as emphasized by appellant, that in the answer of Annie B. Davis, executrix, to the petition of Frank J. Keller, she declared that "Nineteen hundred dollars of the said $1,950 [in the possession of Mary E. Keller at the time of her death] passed by gift to the respondent and that she intends to account for the same as part of the assets in the hands of the decedent at the time of her death and will before the Orphans' Court make claim to the same and offer evidence thereof," but this declaration is not a bar to her claim, for the very phraseology quoted indicates that she meant that she could not retain possession of the "gift of $1,900" evidenced by the uncashed and therefore inoperative check for that amount unless she proved to the satisfaction of the Orphans' Court that she had earned that sum of money by services rendered to the decedent. Likewise, Mrs. Davis's averment in her answer that the decedent during her lifetime turned over to her $2,000 as a gift, was properly held not to be a conclusive bar to her claim in the proceedings before the Orphans' Court.

The decree is affirmed at appellant's cost.