## Haines Estate

*R. Lee Ziegler*, for exceptants.

*Siegel & Siegel* and *John R. Moore*, for contra.

LEHMAN, J., (FIFTY-EIGHTH JUDICIAL DISTRICT, Specially Presiding), August 18, 1972.— Exceptions to the auditor's supplemental report, now before us, deal with the determination of whether or not exceptants had proved a binding oral contract between decedent and his wife whereby each agreed with the other to dispose of his or her property by leaving everything to the survivor of them and in the event of the predecease of said spouse, after a gift of $1,000 to a nonrelative, the balance of the estate was to be divided one-half to named relatives of decedent-husband and the other half to named relatives of his wife. If so proved, can the third-party beneficiaries, who were to benefit by reason of said oral contract, be successful claimants against decedent's estate where decedent and his wife executed separate but mutual wills with reciprocal provisions in accordance with said contract, but following his wife's death, decedent executed a later will which did not include his wife's named relatives and which revoked his former will?

Decedent, Roy S. Haines, one of 14 children, was born on August 20, 1897. Mamie E. Haines, nee Kratzer, was one of 12 children and was born on March 11, 1899. Roy and Mamie were married to each other in June of 1920. No children were born to their marriage. Following their marriage, they operated Mamie's father's farm for one year and thereafter a farm east

of Lewistown until 1936. Roy was also employed at the local steel mill, retiring after 45 years of service.

After leaving the farm in 1936, they moved to Lewistown where they resided for a time in a portion of a dwelling occupied by Bertha Swartz, sister of Mamie. Mamie died June 9, 1966. Roy continued to reside in Lewistown until his death on December 2, 1968.

Throughout their long and happy marriage, they enjoyed a cordial relationship with Mamie's relatives. When living on a farm, the Haineses spent almost every weekend with the Bertha Swartz family. Both Roy and Mamie spent many Christmas and Thanksgiving holidays with her sister, Mertie V. Aurand, and during said visits Roy helped make hay and pick apples and Mamie assisted in housecleaning and preparing turkeys for the Aurand customers. The Aurands visited the Haineses on their farm at least once each month and more frequently when the Haineses lived in Lewistown.

For more than two years preceding Mamie's death, the health of both Roy and Mamie was deteriorating. As a result of diabetes, Mamie was confined to a wheelchair or was in and out of bed during said period. Roy complained of having silicosis. He evidenced shortness of breath on slight activity.

Mamie inherited $3,445.59 from her father's estate following his death in 1946.

As a result of Mamie's church acquaintance with Mary A. McCoy, secretary to Harry B. Thatcher, Esq., a Lewistown attorney, Mamie scheduled an appointment for Mr. Thatcher to visit her and her husband at their home. Mr. Thatcher called at the Haines' home early in July 1964, pursuant to the said appointment. He had not known the Haineses prior to his visit. He testified that on said visit both Roy S. Haines and Mamie E. Haines were present, that his visit lasted

at least an hour and a half, that Roy, in the presence of his wife, stated that he and his wife had several properties and savings and that they had decided that they wanted the survivor of them to have everything and on the death of said survivor, Helen Bailey was to receive $1,000 and thereafter one-half of their estate was to go to his wife's relatives and the other half to go to his relatives. Mamie E. Haines agreed to this and told the attorney on said visit that she had received money from home. Each outlined to the attorney the names of his or her relatives and the share each was to receive. Both of the Haineses designated Bertha K. Swartz and Mertie V. Aurand, sisters of Mamie, as executrices and also requested the attorney to prepare a power of attorney from the Haineses to them as well as prepare the wills.

On July 7, 1964, Mr. Thatcher returned to the Haines' home and on said date the two wills he had prepared for them were read by him to them and were executed together with the power of attorney. The attorney identified carbon copies of said wills with typed signatures which had been retained in his file, as being true copies of the originals. These were admitted into evidence by the auditor. The original wills have not been found and there is no testimony that such wills can now be produced. Mr. Thatcher was a competent witness, as he would not benefit irrespective of whether the agreement was or was not sustained.

The two wills contained reciprocal provisions, each giving to the surviving spouse the entire estate and in the event of the predecease or failure of said spouse to live for 30 days following the death of decedent, after a bequest of $1,000 to Helen Bailey, a nonrelative, the residue and remainder was divided into two halves, with one-half to the named relatives of Mamie and the other half to the named relatives of Roy. Each will

named Bertha Swartz and Mertie Aurand as executrices. Neither will referred to any agreement between the testator and his or her spouse.

Mamie's will of July 7, 1964, was never probated and there was no administration of her estate, since there apparently was no property in her own name requiring administration.

On November 27, 1967, Roy S. Haines executed a codicil to his will of July 7, 1964, in which he appointed Marie Woodling, his sister, and Harry Erman Haines, his brother, to be his executors in place of Bertha Swartz and Mertie Aurand. On May 27, 1968, he revoked the power of attorney to Bertha Swartz and Mertie Aurand which he had executed on July 7, 1964, at the same time that his original will had been executed.

Roy S. Haines, on or after May, 1968, asked for and received his July 7, 1964, will that he had entrusted to Mr. Thatcher for safe-keeping.

On June 14, 1968, Roy S. Haines executed a new will which was prepared by John R. Moore, Esq., of Selinsgrove, Pa., who is distantly related to him by marriage, by which he revoked all of his previous wills and directed that his estate be divided into as many equal shares as he had brothers and sisters living at the time of his death, including issue of deceased brothers and sisters. Said will recited that Roy S. Haines then had six brothers and six sisters living and two brothers who were deceased, each of whom had issue living. He incorrectly referred to Helen Bailey as one of his sisters and included her for a share of his estate. He named Marie Woodling and Erman Haines as his executors.

Roy S. Haines died on December 2, 1968, and his will of June 14, 1968, was probated on December 6, 1968, and letters testamentary thereon were granted

to Marie Woodling and Erman Haines who proceeded to administer the estate. On January 27, 1970, as executors of said estate, they filed their first and final account and statement of proposed distribution, showing a total personal estate of $84,144.68, proceeds from the sale of real estate of $8,975.00, income in the personal account of $3,369.87 and rent receipts of $333.20, or a total of $96,822.75. Total disbursements, including reserves set aside for the balance of attorneys' fees, Federal estate taxes, etc., amounted to $29,622.75, leaving a balance for distribution of $67,200.

After notice to all parties in interest that the account would be submitted for confirmation on March 23, 1970, the Mamie E. Haines' relatives named in the reciprocal wills of July 7, 1964, filed their objections and exceptions to said account on March 2, 1970. Prior to this date, to wit, May 16, 1969, counsel for said exceptants had filed a notice with counsel for the executors, making claim on behalf of his clients for one-half of the difference between the net residue and $1,000 and on behalf of Bertha Swartz and Mertie Aurand for the usual fee for administering the estate.

On May 11, 1970, we appointed Francis A. Searer, Esq., as auditor to pass upon the objections and exceptions filed to the account of the executors and to such other matters as may properly come before him.

After hearings and arguments of counsel, the auditor filed his report dismissing said objections and exceptions, whereupon the relatives of Mamie E. Haines named in the wills of July 7, 1964, filed exceptions to said report. After additional argument, the auditor filed his supplemental report ratifying and confirming his initial findings.

While counsel for the relatives of Mamie E. Haines who were named in the wills of Roy and Mamie, dated

July 7, 1964, filed 18 exceptions to the auditor's supplemental report, the only matter argued was whether or not the exceptants had proved an agreement between decedent and his wife to execute mutual wills, reciprocal in their provisions, and that said wills were irrevocable. Accordingly, we deem all other exceptions waived.

The auditor's findings of fact, in substance, were that on July 7, 1964, Roy S. Haines and Mamie E. Haines, his wife, executed wills prepared at their request by Harry B. Thatcher, Esq., which contained reciprocal provisions, that both Roy and Mamie agreed on the precise content of their wills after much thought, that they enjoyed a close, friendly relationship with each other and the brothers, sisters, nieces and nephews of Mamie E. Haines, that Mamie died on or about June 1966, and Roy on December 2, 1968, and that following the death of Mamie, the former warm and friendly relationship Roy felt toward Bertha Swartz, a sister of Mamie, was replaced with an attitude of anger toward her.

The last three findings of fact by the auditor are as follows:

"25. If the precise question of irrevocability had been asked of Roy S. Haines and Mamie E. Haines in July 1964 we have no positive testimony as to what their reaction would have been.

"26. Roy S. Haines and Mamie E. Haines did not execute mutual wills in pursuance of a contract or compact.

"27. Attached hereto, made a part thereof and identified as E-1 and admitted into evidence is an assignment from Elwood R. Kratzer, John W. Kratzer, Doris B. Bollinger and Kenneth B. Kratzer and Ruth Kratzer to Ruth Kratzer."

"Findings of fact by an auditor, who has the op-

portunity to see and hear the witnesses, have the weight of a jury's verdict and will not be set aside by the court except on such grounds as would justify setting aside such verdict and the granting a new trial,[1] as where they are clearly unsupported by the evidence,[2] . . . or they are clearly so erroneous that to uphold them would be an injustice.[3] But even when approved by the court, the findings of an auditor will be set aside in the appellate courts to the extent that they may be only inferences drawn from the facts, rather than pure findings of fact, if they are not correctly reasoned or inferred"[4]: 3 Partridge-Remick, Pennsylvania Orphans' Court Practice, §24.03, 188.

In Liggins Estate, 393 Pa. 500, 143 A. 2d 349, it was claimed that decedent had entered into an oral agreement with his daughter and her husband, under which the latter two conveyed to decedent a half interest in an apartment house with the understanding that all three would make reciprocal wills devising the real estate to the survivors. The deed and reciprocal wills were executed in 1951. Subsequently, the daughter died and the two survivors destroyed the 1951 wills and executed new reciprocal wills in 1952, to substantially the same effect. Thereafter, decedent made a new will leaving everything to another daughter. Upon the death of decedent, the son-in-law petitioned for specific performance of the agreement against the daughter who was devisee and administratrix of de-

---

[1] Grissinger Estate, 104 Pa. Superior Ct. 184, 158 Atl. 582; Keller's Estate, 335 Pa. 196, 6 A. 2d 575; Devilbiss Estate, 21 D. & C. 489.

[2] Harbaugh Estate, 320 Pa. 209, 182 Atl. 394; Rosenthal Estate, 35 D. & C. 117.

[3] Hartzell Estate, 106 Pa. Superior Ct. 137, 161 Atl. 494.

[4] Nixon Estate, 104 Pa. Superior Ct. 506, 159 Atl. 172; Jac Estate, 355 Pa. 137, 49 A. 2d 360.

cedent's estate. The Supreme Court, reversing the lower court, held that petitioner was entitled to specific performance by reason of there having been a binding oral contract between decedent, his daughter and her husband to dispose by will of said real estate and that said will was irrevocable. The court further held that said contract did not need to be stated to be irrevocable to become such and that the making of new wills in 1952, and the destruction of the original wills at that time, did not amount to a modification or termination of the original undertaking.

Justice Bell, later Chief Justice, in a unanimous opinion for the Supreme Court, stated at pages 503 and 504, as follows:

"The applicable law is clearly set forth in McGinley's Estate, 257 Pa. 478, 101 A. 807. Two nieces claimed that their aunt and uncle agreed to leave everything to them if they would stay and take care of them. This oral agreement was proved by Mr. Nyce, an assistant director of the Pennsylvania Trust Company, to whom the McGinleys admitted their contract. Mr. McGinley died and thereafter Mrs. McGinley went to live with Mr. and Mrs. Babb, to whom she left the greater part of her estate by will. The Court said (page 483):

" 'It is well settled that one may enter into a valid contract to dispose by will of his property, real or personal, in a particular way, and that *such will is irrevocable*[5] *and the contract will be specifically*

---

[5] While the court in Liggins quoted language from McGinley Estate, 257 Pa. 478, 101 Atl. 807, to the effect that a will executed pursuant to a valid contract to dispose of property, real or personal, in a certain way "is irrevocable and the contract will be specifically enforced . . . ," it is questionable whether it is sound law today in Pennsylvania to speak of a will as being irrevocable because if the will is revoked in breach of contract and a later will executed, the latter will is the "last" will of testator for pur-

*enforced.* There are many examples of the recognition of this doctrine in this State and other states: Cawley's Est., 136 Pa. 628; Smith v. Tuit, 127 Pa. 341; Wright's Est., 155 Pa. 64; Shroyer v. Smith, 204 Pa. 310; Lewallen's Est., 27 Pa. Superior Ct. 320; Park v. Park, 39 Pa. Superior Ct. 212; Frazier et al. v. Patterson et al., 27 L.R.A. (N.S.) 508, and notes. In Thompson on Wills, Section 28, the learned author says: "Mutual wills, that is, where two persons execute wills reciprocal in their provisions, but separate instruments, may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual wills, it is necessary to prove such wills were executed in pursuance of a contract or a compact between the parties and that each is the consideration for the other." When such contract has been proved, the will becomes a writing containing the terms of the agreement, and satisfies the statute of frauds: Shroyer v. Smith, 204 Pa. 310.' " (Italics supplied by the Supreme Court.)

The court in Liggins cited with approval Gredler Estate, 361 Pa. 384, 65 A. 2d 404, wherein it was held that the mutual oral promises made by a husband with his wife in the presence of an attorney, constituted an enforceable contract. The Gredlers were childless and owned real and personal property by the entireties. They requested an attorney to prepare their wills, advising him that they had agreed between themselves that they wanted their property and funds to go to institutions operated by the Catholic Church. The

poses of probate. However, the enforcement of the contract will bring about the same result. See note in 20 University of Pittsburgh Law Review, 419 at 420. See also Snyder Estate, 3 Fiduc. Rep. 463.

attorney suggested it was not necessary at that time to draw wills but that the survivor should make a will carrying out their joint wishes, to which they assented.

As was pointed out in Liggins, there was no writing or will in the Gredler case to evidence said agreement, there were no reciprocal wills and Mrs. Gredler's will was not made until her husband had died and made no reference to any agreement with her husband. It was stated in Liggins, at pages 505 and 506 as follows:

"Nevertheless, the Court [in Gredler] sustained the oral agreement and said (page 387): 'These mutual promises, made by the parties in the presence of a witness (cf. Moffitt v. Moffitt, 340 Pa. 107, 16 A. 2d 418), constituted an enforceable contract. It is well established that an agreement to make a will or to devise one's property to a particular person or for a particular purpose *is binding and irrevocable* when supported by what the law regards as valid consideration.' See also: McGinley's Estate, 257 Pa. 478, 483, 101 A. 807, 808; Cramer v. McKinney, Executors, 355 Pa. 202, 204, 49 A. 2d 374, 375; Craig's Estate, 298 Pa. 235, 241, 148 A. 83, 85; Culhane's Estate, 133 Pa. Superior Ct. 339, 347, 348, 2 A. 2d 567, 571.

"A claim based upon a contract made with a decedent to leave certain property by will, like any other claim made against a decedent's estate, must be proved (not by evidence which is indefinite, loose, or vague) but by evidence which is clear, precise and convincing, or as it is sometimes expressed, clear, direct and positive. King Estate, 387 Pa. 119, 123, 126 A. 2d 463; Furjanick Estate, 375 Pa. 484, 100 A. 2d 85; Grossman Estate, 386 Pa. 647, 126 A. 2d 468; Stafford v. Read, 363 Pa. 405, 70 A. 2d 345." (Italics supplied by the Supreme Court.)

The lower court in Liggins, sitting without a jury, found that reciprocal wills were signed by the three

parties in the office of their attorney contemporaneously with the execution of a deed conveying to decedent a half interest in the apartment house. On appeal, the Supreme Court, at page 506, stated:

"However, the lower Court denied recovery for the following erroneous conclusions: '*In the similar wills there is no statement that these wills were to be irrevocable or that there was any contractual obligation* . . . the Court finds that the proof is not direct, positive and definite, of the fact that there was a contract to make *irrevocable* mutual wills . . . The Court finds as a fact that *no irrevocable* contract was made between Harry L. Oldham and William Liggins [decedent] wherein either party was estopped from destroying his will.[6] Conclusions of law . . . 2. In the instant case there was no specific contract that the wills were *irrevocable.*' " (Italics supplied by the Supreme Court.)

This is precisely what was done by the auditor in the case before us. The auditor in his finding of fact no. 2 found: "On July 7, 1964, Roy S. Haines and Mamie E. Haines executed wills which contained reciprocal provisions, copies of which are attached to this report, admitted into evidence, and marked as E-3 and E-2 respectively." By his finding of fact no. 21, he found: "Both Roy S. Haines and Mamie E. Haines agreed on the precise content of both their wills and much thought had been given by them to the distributive scheme." These two findings of fact when considered with the auditor's findings of fact nos. 25 and 26, supra, clearly demonstrate that the auditor fell into the same error as was pointed out as having been committed by the lower court in Liggins Estate, supra. The auditor in the case at bar was mistaken in his

---

[6] " [The Supreme Court makes a note that] This was mistakenly termed a finding of fact when in reality it was a conclusion of law."

conclusions of law (improperly termed findings of fact) and in the inferences and deductions he drew from the facts. As in the Liggins case, Justice Bell, page 509, said of the chancellor in that case that "(h)e erroneously believed that a contract to leave certain property to the survivors by mutual or reciprocal wills was irrevocable *only* if the parties specifically agreed that the contract was irrevocable, or if the wills themselves recited that they were irrevocable, or made pursuant to an irrevocable contract. It is clear from the authorities hereinabove set forth that this is not the law." (Italics supplied by the Supreme Court.)

The original wills in the Liggins case had been destroyed but a typewritten copy of decedent's will was identified by the attorney, just as was the situation in the case at bar.

We are satisfied that Mr. Thatcher's testimony was clear, precise and convincing and that Roy S. Haines and Mamie E. Haines agreed with each other to execute mutual wills, reciprocal in their provisions, but separate instruments, whereby they were irrevocable. The auditor found that the Haineses "agreed on the precise content of both their wills and much thought had been given by them to the distributive scheme" (finding of fact no. 21) and that on "July 7, 1964, Roy S. Haines and Mamie E. Haines executed wills which contained reciprocal provisions . . ." (finding of fact no. 2). After having made such findings of fact, he fell into error as to the legal effect of such a situation. In his discussion of his findings of fact, the auditor characterized Mr. Thatcher's testimony as "very clear and lucid." The auditor mistakenly believed it was necessary to find specific agreement that the contract between Roy and Mamie Haines was irrevocable because in his finding of fact no. 25 he finds that "we

have no positive testimony as to what their reaction would have been" on the question of irrevocability.

Where the wills on their face do not express the terms of the contract, in order to sustain the contract there must be proof of it aliunde the wills, notwithstanding that the parties were husband and wife. To establish the contract, the proof must be definite, certain, clear and convincing: Culhane Estate, supra, pages 348, 349.

In addition to the testimony of Mr. Thatcher, the attorney-scrivener of the mutual wills and a witness to the oral contract of Roy and Mamie Haines, Virginia L. Rideout, a good friend of both Roy and Mamie, testified she visited regularly in the Haines' home from about January 1965 until Mamie's death, June 9, 1966, and that Roy Haines told her he and Mamie had "made separate wills with the understanding that if one died the remaining one would leave . . . the estate half to his side and half to her side . . . , that they were satisfied." Mrs. Rideout testified that on another occasion, "(w)e were just discussing things and Roy said 'well when I die everything's going to be fair and square,' Mamie said, 'yes it is.' "

Inasmuch as the auditor's findings of fact nos. 25 and 26 in the instant case were based upon a misconception of the law, we set them aside and find in their place as follows:

25. Roy S. Haines and Mamie E. Haines made an oral valid contract with each other in the presence of Harry B. Thatcher, Esq., their attorney, whereby each agreed to dispose of his or her property by leaving everything to the survivor of them and in the event of the predecease of said spouse, after a gift of $1,000 to Helen Bailey, a nonrelative, the balance of the estate was to be divided one-half to named relatives

of Roy S. Haines and the other half to named relatives of Mamie E. Haines and that said binding oral agreement was established by proof that was definite, certain, clear and convincing.

26. On July 7, 1964, pursuant to said oral valid contract, Roy S. Haines and Mamie E. Haines executed separate mutual wills, reciprocal in their provisions, in the presence of their attorney, Harry B. Thatcher, Esq.

The auditor and counsel for the relatives of Roy S. Haines who have been named as his residuary legatees in his probated will of June 14, 1968, rely upon Culhane's Estate, supra, but the only evidence to establish the making of a contract in that case was that of Emma Sliter who testified that she had been a subscribing witness to identical wills of the decedent and her husband. The court in that case stated, 133 Pa. Superior Ct. 339, at page 349, 2 A. 2d at 572: "The testimony of Miss Sliter throws no light upon what actually passed between Michael Culhane and Catherine Culhane when the wills were made. Her testimony consists only of her interpretations of their statements and actions." Culhane held that such testimony was "clearly insufficient to support a finding that a contract was made for the execution of mutual, irrevocable wills."

The auditor also relies upon Keener Estate, 58 Lanc. 435, but the court in that case characterized the testimony as "loose declarations of testamentary intent." Clearly, this is insufficient.

In Swenk Estate, 176 Pa. Superior Ct. 513, 108 A. 2d 825, the balance of decedent's estate was awarded to claimants as third-party beneficiaries of an oral contract between two elderly ladies to make mutual wills with reciprocal provisions. The wills gave no evidence, as is the case in the Haines wills, that they

were executed pursuant to a contract. While the other lady to the contract was in a coma, decedent rewrote her will naming different beneficiaries. The court held that the testimony establishing said oral contract and the signing of the mutual wills with reciprocal provisions was definite, certain, clear and convincing and, accordingly, affirmed the lower court's order in favor of the claimants.

Alice Swenk, decedent, lived in the home of Elizabeth Fisher. Both were in poor health and were not related to each other by blood or affinity. Alice Swenk was unmarried and had no known relatives. Elizabeth Fisher was a childless widow whose closest relatives were a nephew, Ray H. Ulmer, who predeceased her, his wife and their daughter. Both ladies consulted Dr. Frank A. Veri, their physician, about making wills. The court summarized the testimony as follows:

"Dr. Veri testified that Mrs. Fisher desired to have her estate go to the Ulmer family, but if she predeceased Miss Swenk, '. . . she would like to see that Miss Swenk had adequate food and shelter.' He suggested 'to Mrs. Fisher that she draw up a will in which she gave, that is of her personal estate, that she would give equal shares to the Ulmer family and Miss Swenk, in the event she preceded Miss Swenk in death. At that time I suggested that Miss Swenk draw up another will, which would, in my opinion, interlock with Mrs. Fisher's will, and Miss Swenk's will was to state, in the event she preceded Mrs. Fisher, her estate would go to Mrs. Fisher; in the event she followed Mrs. Fisher, her estate would come back to the Ulmer family.' When questioned as to what Miss Swenk and Mrs. Fisher said concerning this suggestion Dr. Veri replied: 'These ladies agreed to it, that proposal, and, following that, the interlocking wills were drawn by you.' (Mr. Windolph.) On July 6, 1950, in response

to a call from Mrs. Fisher, Mr. Windolph went to her home, where in Miss Swenk's presence Mrs. Fisher stated she wanted to make a new will leaving '. . . everything she had, to the Ulmers, but that she nevertheless wanted to do something if she could for Miss Swenk.' Nothing definite was done in connection with the preparation or execution of the wills at that time. However, shortly before November 28, 1950 Mr. Windolph received instructions from Dr. Veri and Mrs. Ulmer to prepare the wills for Mrs. Fisher and Miss Swenk. When the wills were prepared Mr. Windolph returned to the Fisher home, where, in the presence of Miss Swenk, Mrs. Fisher, Dr. Veri and Mrs. Ulmer he read both wills in their entirety. When he then asked them whether the wills met with their approval he testified: 'They both said the wills did meet with their approval, and that the wills were in conformity with what they had discussed or what they had agreed on—I am not absolutely certain what words were used.'

"From this testimony it is clear that Mrs. Fisher and Miss Swenk agreed, in the presence of Dr. Veri and Mrs. Ulmer, that the survivor would bequeath her property in accordance with the wills made to effectuate their agreement. These mutual promises, made by the parties in the presence of witnesses, constituted an enforceable contract: Gredler Estate, 361 Pa. 384, 65 A. 2d 404. Furthermore, the circumstances under which the wills were executed fully support the finding that Mrs. Fisher and Miss Swenk entered into an agreement to execute mutual wills which were intended to be irrevocable."

Clearly, the testimony of Mr. Thatcher and Mrs. Rideout of words said and matters decided upon by Roy and Mamie Haines was more probative of a contract to dispose of property in a particular manner

by executing mutual wills which were intended to be irrevocable than in the Swenk case.

Swenk was followed by President Judge Trembath in the Orphans' Court of Lackawanna County in Vanston Estate, 26 D. & C. 2d 555. That case involved husband and wife without equal testamentary disposition toward their two sons. Husband had made a will in favor of his wife with alternate provision in favor of son John only. When son William learned of said will, there was a confrontation of husband, wife, son John, son John's attorney, son William and son William's attorney. Husband then reluctantly agreed to leave one-half of his estate (other than his insurance business) to his two sons. Wills were prepared and executed accordingly. Wife survived and executed another will. Although the court commented that there was no testimony of any conversation as to irrevocability by husband and wife or by anyone else in their presence, it concluded that the evidence proved an irrevocable contract to make wills. There is a marked similarity between the Vanston case and our case. There, as here, the objects of the bounty of husband and wife varied after death of both of them and therefore required compromise of their repugnant wishes. The court held that the wife's new will breached the contract and that distribution of her estate would be controlled by said contract.

Counsel for the relatives of Roy S. Haines named in his will of June 14, 1968, apparently argued before the auditor that the instant case can be distinguished from Swenk by reason of the absence of third-party beneficiaries at the time of making the alleged contract and the execution of the mutual wills of July 7, 1964, and lack of knowledge or information on the part of said third party beneficiaries of the alleged

contract. While not argued before the court, there is no basis in law for such a proposition. The comment to Restatement of Contracts, §135, states: "No assent by a donee beneficiary to the contract or knowledge on his part of its existence is necessary to give him a right of action on it."

While only a small portion of decedent's liquidated estate resulted from the sale of real estate under power granted the executors in decedent's will, counsel for the Roy S. Haines' relatives claim that the oral contract does not meet the requirements of the statute of frauds insofar as said real estate was concerned. The latest pronouncement of the law on this matter appears in Herr Estate, 400 Pa. 90, wherein the Supreme Court, at page 96, states:

"The Statute of Frauds applies to and renders unenforceable an oral promise or agreement to will real estate . . . (T)he statute is satisfied if claimant relies upon an oral promise or contract to leave him by will certain real estate if the will or any other writing is connected with and supports the parol contract. Liggins Estate, 393 Pa. 500, supra; Gredler Estate, 361 Pa. 384, 65 A. 2d 404; Shroyer v. Smith, 204 Pa. 310, 54 A. 24. Cf. Cramer v. McKinney, 355 Pa. 202, 49 A. 2d 374."

In addition to the above authorities may be added: McGinley Estate, supra; Swenk Estate, supra; Rule v. Rule, 10 D. & C. 2d 294, 298.

Such executed will may be proved by its scrivener producing and identifying a true copy of same where the scrivener was present and saw said will being signed and the original will cannot be produced. See Liggins, footnote, page 503. We are satisfied that the requirements of the statute of frauds have been met by proof of a true copy of Roy S. Haines' executed will.

For the reasons above set forth, the Mamie E. Haines relatives, who were designated to be recipients of one-half of decedent's estate, after payment of the sum of $1,000 to Helen Bailey, by virtue of the irrevocable oral contract between Roy S. Haines and Mamie E. Haines, are entitled thereto as claimants and third-party beneficiaries.

We make the following

## CONCLUSIONS OF LAW

1. One may enter into a valid contract to dispose by will of his property, real or personal, in a particular way and the contract will be binding and irrevocable.

2. It was not necessary that said oral contract between Roy S. Haines and Mamie E. Haines specifically provide that it was irrevocable or that their mutual wills, signed pursuant to said contract, recite that they are irrevocable or made pursuant to an irrevocable contract because said oral contract is binding and irrevocable.

3. Where wills on their face do not express the terms of the contract, in order to sustain the contract there must be proof of it aliunde the wills, notwithstanding that the parties were husband and wife. To establish the contract, the proof must be definite, certain, clear and convincing.

4. Decedent breached said oral contract by making a later will which revoked his will of July 7, 1964, made pursuant to said oral contract.

5. By reason of said breach of contract and the claim of the relatives of Mamie E. Haines, who were to share by said contract in decedent's estate, said relatives are entitled to participate as third-party

beneficiaries in the distribution of decedent's estate in accordance with the terms of said contract.

6. No assent by a third-party beneficiary to the contract or knowledge on his part of its existence is necessary to give him a right of action on it.

7. An executed will may be accepted as the writing containing the terms of the contract and satisfying the statute of frauds.

8. Where an auditor's findings of fact are clearly unsupported by the evidence, or are clearly so erroneous that to uphold them would be an injustice or where his conclusions are based on a misconception of the law, it is the duty of the court to correct same.

9. The exceptions filed to the auditor's supplemental report on behalf of the relatives of Mamie E. Haines who were to share by said contract in decedent's estate be and are hereby sustained insofar as same pertain to their claim for distributive shares of decedent's estate but are dismissed as to other matters.

10. After payment of all costs of this proceeding, all costs of the appeal from the probate of decedent's last will and testament and the grant of letters testamentary and payment of the sum of $1,000 to Helen Bailey, prior to any distribution or payment on account of any distributive share, the balance for distribution shall be paid to the following as creditors and third-party beneficiaries named in the binding and irrevocable oral agreement between decedent and his wife:

> 1/8th   to Mertie V. Aurand
> 1/56th to Elwood R. Kratzer,
>           now to the use of Ruth Kratzer
> 1/56th to John W. Kratzer,
>           now to the use of Ruth Kratzer
> 1/56th to Kenneth R. Kratzer,
>           now to the use of Ruth Kratzer

1/56th to Doris B. Bollinger,
     now to the use of Ruth Kratzer
1/8th  to Bertha K. Swartz
1/14th to Raymond F. Kratzer
1/56th to Dorothy Kuhns
1/56th to Forry Wagner
1/56th to Margaret Stroup
1/56th to Robert Wagner
1/56th to Thelma K. Aurand
1/56th to Paul L. Grimminger

Total  28th  or  ½
   56

To the balance for distribution thereafter remaining shall be added, for accounting purposes only, the sum of $1,000 which sum shall be credited against the distributive share to be paid to Helen Bailey and the remaining net sum shall be distributed in accordance with the provisions of the last will and testament of decedent, dated June 14, 1968, and probated in the Register of Wills Office in and for Mifflin County in Will Book No. 25, page 780.

## ORDER

And now, August 18, 1972, for the reasons hereinabove set forth, exceptions to the auditor's supplemental report are sustained in part and dismissed in part and the personal representatives named in the probated last will and testament of decedent, are ordered and directed to distribute the balance of said estate in accordance with our conclusion of law no. 10. Exceptions are noted to Siegel & Siegel, Esqs., and John R. Moore, Esq., counsel for decedent's estate and the legatees named in decedent's last will and testament.